## SUPREME LODGE KNIGHTS OF PYTHIAS *v.* DAVIS.

### Opinion delivered May, 3, 1909.

INSURANCE—WARRANTY AS TO USE OF LIQUORS.—In a policy of life insurance executed in 1889, the assured made a warranty that he used intoxicating liquors occasionally but not daily, and upon applying for a change of beneficiary in 1907 represented that the former warranty was to be considered as repeated. *Held* that the warranty referred to the use of liquors at the time the policy was originally issued.

Appeal from Lee Circuit Court; *Hance N. Hutton,* Judge; affirmed.

*Brown & Anderson,* for appellant.

The defendant was entitled to a peremptory instruction. 35 Ark. 147; 57 *Id.* 461. Courts of law as well as of equity apply the doctrine of equitable estoppel or estoppel *in pais.* 79 Ark. 315.

*H. F. Roleson,* for appellee.

BATTLE, J. Mrs. Mary W. Davis, Pearl M. Robinson, and Anna B. Robinson brought an action against the Supreme Lodge of the Knights of Pythias in the Lee Circuit Court on a "benefit certificate issued by defendant to John C. Robinson on the 16th day of March, 1907, for the sum of $3,000, to be paid to the plaintiffs, the beneficiaries named, on certain conditions. They alleged that John C. Robinson died in July, 1907, that he was in good standing in his lodge at the time of his death, and had paid

all the premiums on his policy that were due and payable prior to his death, and that the conditions upon which the $3,000 were to be paid had been performed, and asked for judgment for the $3,000.

The defendant answered and pleaded two defenses as follows:

1. "That in the application made by John C. Robinson for the issuance of the benefit certificate sued on he made the following representations and warranties, upon the faith of which the benefit certificate was issued to him for the use and benefit of the plaintiffs in this cause; that the said John C. Robinson was asked the question: 'Q. Have you ever used intoxicating liquors? A. Yes. Q. If so, state whether generally or occasionally, and explicitly to what extent. A. Occasionally. Q. Are you now in the daily habit of using intoxicating liquors? If so, how many times daily? A. No.'

"That said representations were false and were known to the applicant to be false when he made the same, and that at the time said application was made to this defendant to issue the benefit certificate sued on in the suit John C. Robinson not only used intoxicating liquors in excess, and daily, but he had within the previous six years taken a course of treatment for the whisky habit upon three separate and distinct occasions; that said habit of intoxication and the use of intoxicating liquors in excess were not known to the defendant at the time said certificate was by it issued to said John C. Robinson, and the issuance of same was obtained by fraud and misrepresentation.

"2. That, under the provisions of the general laws of the Supreme Lodge, Knights of Pythias, which are especially made a part of the contract of insurance between it and its members, and which provision is set out in the certificate herein sued on, it was agreed that, in the event a death of a member should be caused or superinduced by the use of intoxicating liquors, the amount to be paid upon such member's certificate should be a sum only in proportion to the whole amount as the matured life expectancy is to the entire expectancy at the date of admission to the insurance department; that the death of John C. Robinson was either caused or superinduced by the use of intoxicating liquors, the

immediate cause of death being uremia, which was caused by and was due to said excessive use of intoxicating liquors."

The defendant thereupon tendered in the court the sum of $1,404.28, being the full amount due to the beneficiaries under said provisions of the contract.

In the trial it was shown "that John C. Robinson was first insured in the Endowment Rank of the Order of Knights of Pythias in the sum of $3,000, by a benefit certificate dated February 9, 1889, the beneficiary being his mother, Mrs. T. J. Robinson." Robinson stated in the application upon which this certificate was issued, which was made a part thereof and warranted to be true, that he was twenty-one years old; that there was no other insurance on his life; that he had never been refused insurance by any company; that there had never been any opinion sought from, or any consultation held with, any officer of any life insurance company or order, or any physician or surgeon, as to whether the applicant's life was safely insurable; that he had never been abroad; that he had used intoxicants, but only moderately and occasionally; that he did not use morphine or opium; that he had not during the past seven years had any sickness or any disease necessitating the employment of a physician; that both his parents were then living, and that neither of them had had consumption, scrofula, cancer, nor various other diseases."

It was also shown that, on the second day of May, 1899, Robinson surrendered the "benefit certificate" already issued to him, and caused another to be issued, the beneficiary of which was Elizabeth Robinson, his wife; and on the 16th of March, 1907, Robinson applied for a third certificate, and in his application used the following language:

"The undersigned makes application for change of beneficiary, in accordance with the provisions of Sec. 490, Supreme Statutes, Insurance Laws, Sec. 31, Chap. 6, and Sec. No. 492, Supreme Statutes, Insurance Department Laws, Sec. 33, Chap. 6, and for that purpose respectfully submits the following:

"Benefit Certificate in the 4th Class, Plan Life Insurance Department, No. 19004, was issued on the...........day of ...............A. D...... to the undersigned, which certificate is hereby surrendered for cancellation upon the issuance to

the undersigned of a certificate, or certificates, in lieu thereof, in accordance with this application.    The warranties, statements and agreements binding upon the undersigned under said surrendered certificate, except in so far as they are modified by this application or the laws now in force governing the Insurance Department, are to be considered as here repeated, and enter into and become a part of the contract to be evidenced by the certificate or certificates hereby applied for when issued."

He surrendered the second certificate, a third was issued upon the conditions stated in his application, and plaintiffs were named as the beneficiaries therein.

There was no evidence that the statements of Robinson as to use of intoxicating liquors at the time of his first application, to wit, on the 9th day of February, 1889, the date of the first certificate, were untrue, but there was evidence that he drank such liquors to excess when the third application was made.    The evidence adduced as to the use of intoxicating liquors having caused or superinduced the death of Robinson is conflicting.    There was evidence that it did not.

The court instructed the jury, in part, as follows:

"The court charges you that any habit of the deceased which hastened or caused his final illness, directly or indirectly 'superinduced' that death; and if you find from the evidence that Dr. Robinson, owing to the excessive use of intoxicants, had acquired nephritis, and that such nephritis produced the uremia from which he died, then the court charges you to find for the plaintiff only in the sum tendered by the defendant."

There was another instruction given to the jury upon the same subject, but this substantially explains and includes that.

The defendant asked, and the court refused, the following:

"2.    The court charges you that the statement made by Dr. Robinson in his application for change of beneficiary in 1907, wherein he reiterated the statements made when he first became a member of the order, that he did not use intoxicating liquors to excess, was a warranty, and that, the uncontradicted evidence showing that Dr. Robinson was, at the time he obtained the benefit certificate here sued on, addicted to the excessive use of intoxicating liquors, said warranty was breached, and you will find

for the defendant, except as to the amount tendered by the defendant."

The jury returned a verdict in favor of plaintiffs for $3,000 and interest amounting to $90. The defendant appealed.

In the instruction asked by the appellant and refused by the court it is assumed that Robinson asserted or represented that the statements made by him in his application for the first certificate were true when he made application for the third, and the agreement making them a part of the contract, evidenced by the last certificate, meant, in part, that he, at the time when the third application was made, used intoxicants, but only moderately and occasionally. But we do not think so. The representation or warranty that they were true meant that they were true at the time made. The statements show that such was the intention. In the first application, made in 1889, he represented that he was twenty-one years old. He certainly did not mean to say, in an application for the third certificate, made in 1907, eighteen years afterwards, that he was still twenty-one years old. Statements should be construed with reference to the time made unless they expressly or by implication refer to the future. In this case no reason appears why the applicant intended in the first application to refer to the future, but there is to the contrary. The court did not err in refusing to grant the instruction asked for by the appellant.

The evidence was sufficient to sustain the verdict.

Judgment affirmed.