EMINENT HOUSEHOLD OF COLUMBIAN WOODMEN *v.* MAT-
LOCK.

Opinion delivered May 17, 1920.

1. INSURANCE—WARRANTY AS TO USE OF INTOXICANTS.—Where a benefit certificate reissued to include an additional beneficiary, reaffirms the answers, warranties and agreements contained in the original application, the certificate does not lapse because at the time of reissuance insured had become addicted to the use of intoxicating liquor; the warranty as to the use thereof referring to the use of liquors at the time the original certificate issued.

2. INSURANCE—FORFEITURE BY REASON OF USE OF INTOXICANTS.—In a suit on a fraternal benefit certificate, providing that if the insured shall become intemperate in the use of liquor to such an extent as to impair his health the certificate shall be void, the certificate is not forfeited in the absence of testimony showing the use of liquor on the part of insured to an extent which would impair his health.

3. INSURANCE—CORONER'S VERDICT OF SUICIDE.—In an action on a benefit certificate where it was claimed that insured committed suicide, the verdict of the coroner's jury, finding that he committed suicide, was inadmissible where the contract of insurance did not provide that it should be admitted.

4. INSURANCE—INSTRUCTION.—In an action on a benefit certificate wherein it was contended that insured committed suicide, an instruction distinguishing between a voluntary and an accidental act, and not between a sane and an insane act, *held* not erroneous, in the absence of specific objection or request that if the insured was a suicide it was immaterial whether he was sane or insane.

5. EVIDENCE — PRESUMPTION AGAINST SUICIDE.—The presumption against suicide arises even when it is shown that death was self-inflicted, as it is presumed to be accidental until the contrary is made to appear.

6. INSURANCE—SUICIDE—SUFFICIENCY OF EVIDENCE.—In an action on a benefit certificate, wherein it was contended that insured had committed suicide, evidence *held* to make it a jury question whether he had committed suicide.

Appeal from Dallas Circuit Court; *Turner Butler,*
Judge; affirmed.

*R. W. Wilson* and *C. H. Moses,* for appellant.

1. The policy was void *ab initio* because of false
warranties and material misrepresentations. 58 Ark.

528; 72 *Id.* 620; 84 *Id., Fid. Ins. Co.* v. *Beck;* 90 Ark. 264; 96 *Id.* 499; 104 *Id.* 538; 120 *Id.* 605; 135 *Id.* 65.

2.    The case should be reversed for a new trial. It was positively proved and undisputed that Doctor Matlock was a continuous user of intoxicating liquors. It was error to exclude the coroner's verdict; it was competent evidence for the jury. 93 Ark. 209; 92 N. W. 1104; 181 U. S. 49; 126 Ark. 483; 113 S. W. 695; 141 *Id.* 936; 175 *Id.* 266; 70 N. E. 1066; 90 Atl. 73.

3.    The court erred in giving and refusing instructions. "Suicide sane or insane" was inserted in the policy for the purpose of avoiding liability for all kinds of suicide, regardless whether or not the self-destruction was voluntary and intentional, or the result of insane impulse, or mental aberration over which the insured had no control. 78 N. E. 488; Vance on Ins., p. 522; Elliott on Ins., 368. Our construction or these "suicide" or "self-destruction" clauses has been long sustained by the courts. 93 U. S. 286; 42 N. W. 156; 41 Atl. 351; 57 Pac. 936; 39 N. W. 658; 88 *Id.* 687; 127 U. S. 661. The constitution and by-laws of a fraternal benefit association form a part of the contract (81 Ark. 512), and one binding as part of the contract. 105 Ark. 140-146; 52 *Id.* 202; 55 *Id.* 210; 81 *Id.* 512; 104 *Id.* 538; 135 *Id.* 65; 98 *Id.* 421. Instructions 3 and 4 should have been given, and it was reversible error to refuse them. 132 Ark. 63.

4.    The prejudicial arguments of plaintiff's counsel call for a reversal. 117 Ark. 551; 132 *Id.* 455. We have a special statute controlling fraternal benefit societies, and they are exempt from the provisions of the other insurance laws of our State. Act 462, Acts 1917, p. 2087; 168 S. W. 593; 196 *Id.* 427; 200 *Id.* 76.

5.    At best a judgment for only $400 should be entered here. All the circumstances point to drunkenness and suicide. 95 Ark. 456.

*Gaughan & Sifford,* for appellee.

1.    The policy was not void *ab initio.* This case is governed by 90 Ark. 264-8.

2. The covenant was not forfeited under article 15, constitution and by-laws of the order, because there is a total lack of any evidence to show that deceased used liquor to such an extent as to impair his health, and it is not shown that the excessive use of liquor caused his death, and it was not shown that article 15 was in force or effect on December 18, 1915.

3. There was no error in excluding the coroner's verdict. 191 S. W. 25.

4. There was no error in the instructions complained of. They state the law. 80 Ark. 190; 128 *Id.* 155; 133 *Id.* 176.

5. As to the prejudicial remarks of counsel, no request was made below for the court to rule on them. The record is silent as to what may have been said, or the court's ruling thereon. 103 Ark. 359; 100 *Id.* 437.

6. Suicide was not shown by the evidence or physical facts. 80 Ark. 190; 133 *Id.* 176. 95 Ark. 456, is an entirely different case from this.

SMITH, J. This is an action by appellee, as guardian and next friend of her infant children, against appellant, for a sum alleged to be due on a policy of insurance for $2,000, issued on the life of Dr. Matlock, the father of said children. Payment of said policy is resisted upon the grounds, that Dr. Matlock, the insured, had made false representations in regard to the use of intoxicating liquors when he obtained the policy sued on, and had become intemperate in the use of intoxicating liquors; and liability in any event in a greater sum than $400 is denied under a clause of the policy reading as follows: "I agree, for myself and beneficiary, that, in case of suicide, sane or insane, there shall be due and payable only one-fifth of the otherwise value of the covenant." The instruction submitted to the jury only the question of suicide, and there was a finding on that issue for appellee, as the verdict returned was for the full amount of the policy, and this appeal is from the judgment pronounced upon that verdict.

The policy or benefit certificate sued on was issued December 18, 1915; but this appears to have been a reissuance of a certificate dated January 10, 1910, and the certificate was reissued to include as a beneficiary the name of a baby born after the original certificate had been issued.

There is testimony to the effect that between January, 1910, and December, 1915, the insured drank liquor to excess, and it is claimed that under an article of the constitution of the society the certificate forfeited on that account, the article of the constitution referred to so providing. There is no evidence that at the time of the original application, or prior to that time, the insured used liquor to excess; and there is no evidence that any of the statements made by the insured were false.

The certificate sued on contained the following clause: ''It is understood and agreed that my original application and medical examination, including answers to questions, warranties, and agreements therein contained, and which was the basis upon which the original covenant was issued, are hereby reaffirmed, and the same, and this application, shall be considered as a part of the contract under which the new covenant herein applied for, the same as though set out at length herein.''

It is insisted that as the insured had become addicted to the use of intoxicating liquors at the time the certificate sued on was issued the policy lapsed on that account. But the case of *Supreme Lodge Knights of Pythias* v. *Davis,* 90 Ark. 264, is against that insistence. The question here raised was there decided, and the court said that the warranty contained in the last certificate referred to the use of liquors at the time the original certificate issued.

It is contended that the policy forfeited under article 15 of the constitution of the society. This article provides that if the guest or beneficiary holding a certificate shall become intemperate in the use of liquor to such an extent as to impair his health, the certificate shall be void

and of no effect. This insistence appears to be fully answered by the reply made that there is a total lack of any testimony which shows the use of liquor on the part of the deceased to an extent which would impair the insured's health.

It is next insisted that error was committed by the court on the trial below in refusing to admit in evidence the verdict of the coroner's jury of inquest, which reflected a finding by the jury that the insured had committed suicide. This question was presented to and decided by this court in the case of *American Nat. Life Ins. Co.* v. *White,* 126 Ark. 483, where we held that the coroner's verdict was inadmissible in cases where the contract of insurance itself did not provide that it should be admitted; and the certificate here sued on contained no such provision.

It is next insisted that error was committed in giving over appellant's objection the following instruction:

"(B) The jury are instructed that, though you should find from the evidence that deceased, Dr. Matlock, came to his death from a gunshot wound, and that, at the time of the shooting, he held the gun in his hand, this of itself is not sufficient to warrant you in finding for the defendant, unless you further find from the greater weight of evidence that the gun was fired voluntarily by the deceased with the intention of inflicting upon himself the injury, and was not the result of accident."

The objection to this instruction is that it virtually eliminates from the case the question of the insured's sanity; whereas the policy provides for the payment of only one-fifth the sum otherwise due if the insured should commit suicide, whether sane or insane. But no objection to that effect was made at the trial below; and it is apparent that the court was not attempting to distinguish between a sane and an insane act, but between a voluntary act and an accident, and as thus interpreted the instruction finds full support in the case of *Grand Lodge A. O. U. W.* v. *Banister,* 80 Ark. 190, from which case it appears

to have been practically copied. See, also, the cases of *Aetna Life Ins. Co.* v. *Taylor,* 128 Ark. 155; *Aetna Life Ins. Co.* v. *Wepfer,* 133 Ark. 176.

A specific objection to the instruction should have been made; or an instruction should have been requested, telling the jury that if the insured was a suicide, then it was immaterial whether he was sane or insane, if it was thought that the instruction given was open to the objection now urged against it.

The necessity for a specific objection is more apparent when it is stated that the question whether Dr. Matlock committed suicide was submitted to the jury under an instruction which stated that "The defendant insurance company defends on the ground and theory that the death resulted from the voluntary act of the deceased in intentionally inflicting upon himself the fatal wound. The court tells you that that is a perfect defense, if proved."

It is very earnestly insisted that the court should not have submitted to the jury the question whether Dr. Matlock committed suicide, because no other reasonable inference is deducible from the testimony. And this contention presents the difficult question in the case.

The insured was a physician, and enjoyed an extensive practice, and about four p. m. of a day in August, 1916, he came from town to his home, and went into his dining room, where his eldest daughter served as his lunch some canned goods he had brought with him. Shortly after finishing his lunch he went into another room and got his double-barreled shotgun and shot his wife in the face, but although severely wounded she later recovered. There is no testimony whether he had previously quarreled with his wife or not. A neighbor testified, however, that just before the shot was fired which struck Mrs. Matlock she was heard talking to her husband in pleading tones. Mrs. Matlock fell wounded and bleeding on the floor, and Dr. Matlock walked to a nearby door, and in a few seconds another shot was heard. This shot was fired from the same gun, and killed Dr. Matlock

instantly, blowing his chin and face away by shot that entered underneath his chin and ranged upward and slightly outward. Dr. Matlock was a left-handed man, and the shot which killed him ranged slightly to the right, hitting the top of the door facing of the dining room at an angle of nearly ninety degrees, and when the body was found the gun was lying parallel with the body.

Appellant attaches much importance to the fact that Dr. Matlock came home and ate his lunch at four p. m.; but it was not shown that this was an unusual thing for him to do.

We think it must necessarily be true that Dr. Matlock shot his wife; but it does not necessarily follow that he also intentionally took his own life. No one knows what happened in the interval between the two shots. There was no testimony that Dr. Matlock had said or had done anything which indicated that he contemplated committing suicide. No explanation is attempted of the shooting of Mrs. Matlock, and we can only surmise how angered or excited her assailant must have been after firing that shot, or what his conduct was. As was said in the case of *Grand Lodge A. O. U. W.* v. *Banister, supra,* there is a presumption against suicide, and this presumption arises even when it is shown by proof that death was self-inflicted, as it is presumed to be accidental until the contrary is made to appear; and we cannot say that the jury should have found that insured committed suicide unless from the facts recited we must declare the law to be that no other conclusion could reasonably be drawn. We are unable to say, as a matter of law, that the fatal shot was not fired as the result of some act, such as violently striking the gun against the floor, or striking it against some object; and while it must be confessed that the theory of suicide does appear more probable than any other theory, the question of probabilities is one addressed to the jury, and not to us.

In the case of *Industrial Mutual Indemnity Co.* v. *Watt,* 95 Ark. 459, we said that if reasonable men, view-

ing the facts shown by the testimony, might come to different conclusions as to whether the deceased committed suicide, then the facts, although undisputed, were properly submitted to the jury, and in the application of that test to the facts of this case we do not reverse the judgment of the jury, because we are unable to say that reasonable men must necessarily conclude that Dr. Matlock was a suicide.

It is earnestly insisted that the decision in the Watt case is conclusive of this case. But we think a comparison of the facts of the two cases will show significant acts and statements of the deceased which were present there but are absent here, which preclude us from saying here, as was said there, that "the condition of the body when it was found, and the course of the bullet, coupled with his recent statements and acts in regard to self-destruction, are conditions and circumstances inconsistent with any other reasonable cause of death than that of suicide."

No error appearing, the judgment is affirmed.