Complainant seeks to cancel a "dentist's liability policy" on the ground that the defendant, at the time of the issuance to him of a renewal of an outstanding policy, falsely represented and warranted that he was a member "in good standing" of the New Jersey State Dental Society when, as a matter of fact, he was not such a member.
The facts adduced at the final hearing disclosed that the original policy was to cover for the term September 20th, 1934, to September 20th, 1935; that thereafter two renewal vouchers were issued to defendant, the first to cover from September 20th, 1935, to September 20th, 1936, the second from September 20th, 1936, to September 20th, 1937.
In November of 1936 defendant extracted a tooth for a patient and on December 31st, 1936, defendant was notified of a claim for damages arising out of that operation. Thereafter suit was brought against the defendant. Complainant undertook a defense and in connection with its investigation ascertained that at the time of the alleged malpractice defendant was not a member "in good standing" of the State Dental Society. Upon that discovery the bill was filed.
The renewals aforesaid were issued as a matter of course,i.e., no new application was required therefor and complainant delivered "renewal vouchers," the defendant paying for them, and neither party was required to solicit the other, in fact, the policy provides that the policy "may be renewed upon delivery by the Company of a renewal voucher."
The renewal vouchers provided that "in consideration of the premium" insurer "agrees to continue in force * * * policy, subject to all of its terms, limits and conditions."
It appears that complainant sells liability insurance under two classes of policies, one to dentists who are not members of dental societies and the other to those who are members of the New Jersey State Dental Society, and that a slightly higher annual premium is charged for the non-member policy. Defendant had carried a non-member policy prior to the issuance of the one in suit and the latter policy was issued in pursuance of a letter to complainant from the defendant *Page 439 
advising the insurance company that defendant was "affiliated" with dental societies. The difference in premium was approximately $3.
The policy in suit was issued "in consideration of the statements and agreements in the application for this policy and which are made a part hereof, and the payment of the annual premium."
The form of the policy is designated as "special dentist's liability policy for members of the New Jersey State Dental Society." The "representations" made by the defendant at the time of the issuance of the policy in suit were, inter alia, (a) "I agree that this policy applied for shall be based upon the following statements and agreements; (b) "I am a member in good standing of the New Jersey State Dental Society."
The evidence discloses that at the time of the renewal issued under date of August 10th, 1936, for a period of twelve months from September 20th, 1936, defendant was not a member in good standing of the State Dental Society, he having failed to pay his annual dues for the year 1936. The court so holds because under the laws of the dental societies, when a member fails to pay his dues in any year within forty-five days from January 1st, or not later than February 15th of any year, he is, under the laws of said society, automatically "considered in poor standing and will not be entitled to vote," and is "automatically suspended." He is, however, privileged to pay his dues at any time up until December 31st of any year and upon payment "automatically" becomes a member in good standing, but on failure to pay by December 31st as aforesaid, he is dropped from membership, so that even during the period when dues are unpaid, and until December 31st of that year, membership continues but it is a suspended membership. The fact in this case is that defendant failed to pay his dues at any time during the year 1936 and at the end thereof lost his membership for that reason.
Taking up the form of the policy as originally issued on September 20th, 1934, we find that (a) it is captioned as being "special dentist's liability policy for members of the *Page 440 
New Jersey State Dental Society;" (b) it recites the consideration as being, in part, "the statements and agreements in the application for this policy, and which are made a part hereof;" (c) that the applicant's statement in the application was: "I am a member in good standing of the New Jersey State Dental Society."
The reverse side of the policy contains a certificate headed "Special Dentist's Liability Insurance for Members of the New Jersey State Dental Society," wherein the company certifies "that it has insured Nathaniel E. Fridrich * * * a member of the New Jersey State Dental Society, under dental liability policy, in accordance with the terms of the policy on the reverse side," and further certifies that "this policy is issued in consideration of the representations made in the application and the payment of premium."
It is contended by the defendant that the representation made by him that he was a member of the New Jersey State Dental Society must be considered as referring to his status at the time of the making of the application and not as to the time of any renewal or renewals of the original policy.
Whether the representation as to "good standing" is to be considered as a statement relating to conditions as they existed at the time they were made and not as a representation that such condition continued to exist during the life of the policy or any renewal thereof depends upon the construction of the entire policy and a consideration of complainant's undertaking under the policy.
A contract of liability insurance such as this is limited to members of the State Dental Society. It is sold at a less premium than a like policy to non-members. The insurer believes dentists who are members of the State Dental Society are a better class of risk than non-members. The evidence tends to show that this thought is justified in that expert testimony is more readily available in the defense of a malpractice suit for a member than a non-member.
In life, accident and health insurance the representation as to health at the time of the making of the application for the policy is merely a representation of existing conditions *Page 441 
and a change in health conditions is to be expected during the continuance of the policy. It is the risk of this change in health which the insurer assumes and for which the insured pays, and representations made in an application for insurance are generally held to refer to conditions existing at that time.
In fire insurance the existence of occupancy or unoccupancy of the insured property and like representations are representations as to existing conditions and the policy terms provide that a change during the life of the policy must be brought to the company's notice, with penalties for failure, but renewals are made on the basis that statements made in the original application are still accurate.
In fidelity insurance the representation that the applicant is a man of good habits refers to his then status and one of the hazards accepted by the insurer is a change in the habits on the part of the insured, resulting in policy loss, and the statements made in an application refer to the present and not to the future.
In the instant case both parties contracted for a certain status, i.e., membership in the State Dental Society, and the insurance was to cover members and not non-members. This the insured, the defendant in this case, was fully aware of, as is evidenced by his letter making application for the insurance at a reduced rate by reason of the fact that he had become a member or was "affiliated" with the State Dental Society. He thereby changed the form of his policy, which had been theretofore issued, from a non-member policy to a member policy. The defendant knew, or is charged with knowledge, that upon non-payment of dues he became automatically a suspended member of the State Dental Society and that during the period which the dues were not paid his status was that of a dentist whose membership in the State Dental Society had been suspended, and that until that which caused the suspension was corrected, he ceased to be one of the class to whom policies would be issued by the insurer at the premium charged the defendant.
It would seem that the defendant realized that the policy *Page 442 
as originally issued and as renewed was to cover dentists in good standing because in his report of the liability claim sent to the insurer sometime after December 31st, 1936, in answer to the question "of what professional societies are you a member?" he said "Atlantic County, New Jersey State and American Dental Association" when, as a matter of fact, he knew or was charged with knowledge that on the date of the alleged malpractice he was suspended for non-payment of dues and automatically dropped from all kinds of membership in all these societies as of December 31st, 1936, because he had not paid dues.
The testimony clearly shows that had the defendant not been a member in good standing at the time of the original application the policy would not have been issued, and further, that renewals would not have been permitted except to a dentist in good standing at the time of the renewal. This would seem to be plausible because it is hardly to be presumed that had complainant been advised that a member of the Dental Society was not in good standing and therefore not entitled to all of the benefits, that a policy would have been issued until good standing was restored.
It is argued, however, that the status of good standing might be changed during the policy year by the insured's non-payment of dues, and that the policy coverage would not be disturbed thereby, but the mere fact, if it be a fact, that complainant did not provide for forfeiture of the policy upon non-payment of dues does not indicate an intention on the part of the company to insure other than members in good standing. That it was fair enough in its policy terms to anticipate that a policy holder might neglect to pay dues during the policy year, through oversight perhaps, and not thereby void the policy, does not change the fact that it required the insured at the time of the application for the policy to assert his membership to be in good standing.
This court is not called upon to determine the question as to whether or not, had the insured been in good standing at the time of the renewal in question, and by reason of failure to pay his dues had become in poor standing during the continuance *Page 443 
of the policy, that the policy would thereupon have been suspended during the continuance of membership not in good standing.
The wording of the policy may well be said not to support defendant's argument as above outlined. The representation upon which the policy was issued and a part of the consideration for the issuance of the policy, and a part of the policy itself was the representation of membership in good standing, and section 6 of the policy distinctly states that "termination of the
membership" shall immediately cancel this policy. It seems obvious that the entire policy must be read as a whole, and where section 6 speaks of "the membership" it refers to the membership status as represented in the application, to wit, "membership in good standing."
The statement in the application being a part of the policy, as well as part of the consideration for the issuance thereof, it seems idle to say that the representation of good standing was mere surplusage.
One representation made by the defendant in the original application was "I employ no assistants except as follows: No exceptions."
Assuming a renewal of the policy by a like renewal voucher as herein, and assuming further that at the time of the renewal an assistant was, in fact, employed, and that thereafter a claim for malpractice was made by reason of work done by an assistant during the term of the policy, may it be said that the representation was confined to the date of the original application and not to a status that would continue during the life of the policy?
The renewal form continued the policy in force "subject to all of its terms, limits and conditions." One of the terms and conditions was membership in good standing in the Dental Society and the defendant, by accepting the renewal voucher, represented, as he had in the original application, that he was a member in good standing at the time of the issuance of the renewal.
The defendant says that the representation as to his status of good standing was not a warranty but merely a representation, *Page 444 
and that complainant must establish that the defendant accepted the renewal knowing that he was not in good standing and with the intent to deceive complainant thereby.
It is true that defendant represented and did not warrant that he was a member in good standing. He says that at the time of the issuance of the renewal he was not aware that he had been automatically dropped from good standing by reason of non-payment of dues, and that he had no intent and could have had no intent to deceive complainant by his acceptance of the renewal.
The answer to this argument, if any is necessary, is that defendant was charged with full knowledge of the by-laws, rules and regulations of the State Dental Society of which he was a member and was charged with full knowledge that if he did not pay his dues within forty-five days from January 1st he was automatically suspended. In addition to this, he admits that he knew that no membership card had been issued to him for the year 1936 and he knew that membership cards only issued to members in good standing and that they only issued to members who had paid their dues, and the testimony of the secretary of the dental society is that the defendant was notified of his non-payment and was also notified that non-payment was followed by automatic expulsion.
In Garrison v. Farmers' Mutual Fire Insurance Co.,56 N.J. Law 235, which dealt with a fire insurance policy, the court held:
"Where a policy of fire insurance is renewed from year to year, the description of the insured property in the original policy must be applied to the condition of the property at the date of the last renewal." This on the theory that each renewal was the beginning of a new risk.
So in the instant case, while the company was still liable for any claim under the old policy which arose during the policy year, the renewal was the beginning of a new risk and the renewal was of a policy to a member in "good standing," the same as it was in the old policy.
In an annotation to Sun Insurance Office v. Roy, 62 A.L.R.
(at p. 823), the general rule is stated to be: *Page 445 
"That in the absence of a new application, or anything showing a different intention, the renewal of a fire insurance policy is impliedly made on the basis that the statements in the original application or policy are still accurate and operative."
It is said in 32 C.J. 1143 ¶ 251, that:
"warranties made at the time of the issuance of the original policy continue to be binding on insured during the period of the renewal, but they are deemed to relate only to conditions as they existed at the time they were made.
This is unquestionably true in a large number of cases and particularly so in cases of life, health, accident and fidelity insurance where the warranty or representation is directed to a certain condition of health or prior physical conditions are the subject of the warranty or where there is a representation as to the habits of an applicant for fidelity insurance. In these cases the courts have pretty generally held these representations to have related to conditions as they existed at the time the statement was originally made, unless they expressly or by implication refer to the future, but in the instant case the subject of insurance was membership in the State Dental Society and for non-members an entirely different policy was provided. A part of the consideration for the policy was membership and when this condition of membership did not exist the consideration failed.
In support of the test above cited we find Fidelity andCasualty Co. v. Meyer, 106 Ark. 91; 44 L.R.A. (N.S.) 493;152 S.W. Rep. 995, an accident insurance policy with warranty of good health and previous medical attention; Supreme Lodge, K. ofP., v. Davis, 90 Ark. 264; 119 S.W. Rep. 257, a fraternal insurance case dealing with habits as to use to intoxicants.
Decree for complainant. *Page 446