### FIDELITY & CASUALTY COMPANY *v.* MEYER.

### Opinion delivered December 9, 1912.

2. ACCIDENT INSURANCE—LATEST DISEASE—INSTRUCTIONS.—When an accident insurance policy limits liability to "bodily injuries sustained through accidental means resulting directly, independently and exclusively of all other causes of death," and it appears that death resulted from an aggravation of a latent disease to which the deceased was subject, an instruction is correct to the effect that the defendant insurance company is liable, under the contract, if death resulted when it did on account of the aggravation of the disease from the accidental injury, even though death from the disease might have resulted at a later period, regardless of the injury.  (Page 95.)

2. ACCIDENT INSURANCE—LATENT DISEASE—INSTRUCTIONS.—When an accident insurance policy limits liability to "bodily injuries sustained through accidental means resulting directly, independently and exclusively of all other causes of death," and it appears that death resulted from an aggravation of a latent disease to which the deceased was subject, an instruction is correct to the effect that the defendant insurance company is liable, under the contract, if death resulted when it did on account of the aggravation of the disease from the accidental injury, even though 'death from

the disease might have resulted at a later period, regardless of the injury. (Page 95.)

3. ACCIDENT INSURANCE—WARRANTIES BY INSURED.—Statements made by insured should be construed with reference to the time made unless they expressly or by implication refer to the future, so that when deceased answered questions propounded by the insurance company seventeen years before his death and was not required to answer said or other questions again, such answers will be deemed to apply to conditions as they existed at the time they were originally made. (Page 99.)

4. ACCIDENT INSURANCE—MISSTATEMENT BY INSURED AS TO AGE.—When a misstatement of insured's age is inadvertently inserted in the policy by the defendant's agents, the defendant company can not claim a forfeiture on that account. (Page 99.)

5. EVIDENCE—EXPERT TESTIMONY.—It is competent for medical expert witnesses, in giving their opinions, to refer to medical authorities, and give in substance the result thereof, the books themselves not being introduced in evidence. (Page 100.)

6. EVIDENCE—PRIVILIGED COMMUNICATIONS—WAIVER.—Where a policy of insurance does not contain any provision waiving the statutory privilege as to the testimony of attending physicians concerning information received in the course of professional employment, the privilege is not waived by plaintiff who introduces an affidavit by a physician of the death of the insured. (Page 100.)

7. PENALTY—DAMAGES AND ATTORNEY'S FEES.—Where plaintiff complied with the terms of an accident policy by demanding payment and furnishing proof of loss within the time specified in the policy, the defendant company will be liable for damages and attorney's fees, under the statute which provides that if the company shall fail to pay within the time specified in the policy after the demand therefor, it shall be liable for damages and attorney's fees. (Page 101.)

Appeal from Hot Spring Circuit Court; *W. H. Evans,* Judge; affirmed.

*H. B. Means* and *Bradshaw, Rhoton & Helm,* for appellant.

1. Appellee can not recover if the death of Louis Meyer was caused by an injury aggravating a cancer or a cancer aggravating an injury. 78 Atl. 317; 179 Fed. 794, and cases cited; 79 Fed. 423; 133 N. W. 752.

2. The contract was void because of the breach of warranties on the part of insured relative to his mental and physical health.

The court should have instructed the jury as requested by appellant to the effect that if Meyer was afflicted with or had a cancerous growth in any part of the chest or abdominal

cavity on April 17, 1911, the date of the contract sued on, then he was not sound physically, and that they should find for the defendant.   14 S. W. 125, 117 U. S. 519.

The warranty was material, going to the validity of the contract itself.   84 Ark. 59; 58 Ark. 528; 71 Ark. 295; 72 Ark. 620; 97 Me. 176; 112 N. W. 113; 139 Mich. 423; 104 S. W. 297; 95 Va. 773.

3.   Breach of warranty as to age avoids the contract. It did not become a binding contract until accepted by the insured, and when he accepted it with the warranty therein that his age was fifty-nine years and that he was in good health, he was bound by such warranty.   117 U. S. 519; 91 Me. 250; 96 Minn. 441; 89 Pac. 929; 110 N. W. 452.

*Mehaffy, Reid & Mehaffy,* for appellee.

1.   The language of the policy requires simply that the accident be the cause of the death independently of all other direct causes.   Unless the death of the insured in this case resulted directly or indirectly, or happened because the deceased had a cancer, then the fact that he had such cancer when he received the injury is unavailable as a defense, although its presence may have lessened his vitality and strength to withstand the injury.   The first instruction given at plaintiff's request was correct.   61 L. R. A. 495, 126 S. W. 111; 156 Mass. 351, 17 L. R. A. 753, 30 N. E. 1013; 93 S. W. 880, 882; 45 N. E. 749; 135 S. W. 501.

2.   In determining a question of forfeiture the court will look to the circumstances surrounding the parties, their course of conduct in relation to each other etc., to ascertain their true intent.   97 Ark. 522.   Forfeitures are not favored, and any circumstance indicating an election to waive a forfeiture is promptly seized upon by the courts.   130 N. Y. S. 455.   A construction will not be adopted which will defeat a recovery if it is reasonably possible to adopt a construction that will permit a recovery.   94 Ark. 417.   Any agreement, declaration or course of action on the part of an insurance company may constitute a waiver of a forfeiture.   A waiver may be inferred from circumstances.   159 Ill. App. 222; 132 N. Y. 200; 94 Ark. 294.   See also, 39 L. R. A. 827; 65 Ark. 581-592; 58 Ark. 535; 81 Ark. 92; 120 U. S. 190.

3. Appellant can claim no forfeiture for misstatement of age in the face of the jury's finding that the age of the insured was incorrectly inserted in the schedule of warranties by the appellant. 143 S. W. 114; 52 Ark. 11; 71 Ark. 295; 65 Ark. 581; 147 S. W. 882.

McCulloch, C. J. This is an action to recover on a policy of accident insurance whereby the defendant undertook to insure "against bodily injuries sustained through accidental means, resulting directly, independently and exclusively of all other causes in death." There was a recovery below for the full amount of the policy, together with attorney's fees, etc., and the defendant appealed.

The assured had carried an accident policy in this company continuously for about seventeen years, the policy being renewed from time to time upon the same terms, sometimes a new policy being issued, and at others the renewal being accomplished by certificate continuing the policy for another period.

While standing in a wagon preparatory to seating himself, he was thrown backwards by the sudden and unexpected start of the horse, which caused him to fall on his back or right side in the region above the hip and strike an iron handhold upon the wagon seat. He threw both hands to his side and at once complained of the injury. The evidence tends to show that he continued to complain of the injury, and was confined to his bed from that time until his death, which occurred several weeks later. A few days after the accident he began to have hemorrhages from the mouth, which continued at intervals until his death. A short time after the accident he also commenced having hemorrhages from the bowels, and these continued until death. Prior to the accident he had every appearance of being a healthy man, and gave no evidence of having a fatal disease; but a *post mortem* held several days after his death revealed the fact, according to some of the testimony, that there was a diseased condition or tumorous growth on the head of the pancreas which enveloped the duodenum. Some of the surgeons gave opinions that the growth was a cancer of at least several months standing. While this was not directly disputed by other testimony, there is evidence to the effect that the physical condition of the man was incon-

sistent with the long continued presence of a malignant cancer and that, therefore, the tumorous growth was dormant rather than malignant, or that it might have been the result of the blow at the time of the accident. The autopsy developed the fact that the hemorrhage from the bowels resulted from a rupture of the duodenum or of the pancreas which enveloped it, but the testimony leaves a doubt as to whether this did not result from the erosion caused from the alleged cancerous growth or from the blow at the time of the accident.

The evidence is sufficient, we think, to warrant the finding that the rupture was caused by the blow and that death resulted from this injury.

It is earnestly insisted that the evidence is insufficient to show that the fall in the wagon was of sufficient force or occurred in such manner as to produce any injury. Under the circumstances, as described by the only eye-witness, it does appear somewhat improbable that a severe injury could have occurred in the manner related; but it can not be said to be an impossibility for the injury to have occurred in that way, and the testimony is sufficient to establish the fact that a severe injury did, in fact, result from the fall. These matters, together with the law applicable to the case, were submitted to the jury in the following instructions:

"1. You are instructed that you are the judges of the cause of the death of Louis Meyer and if you find from all the facts and circumstances in evidence in this case that on the 29th day of April, 1911, the said Louis Meyer while in the act of seating himself or about to seat himself in a wagon preparatory to driving from his place of business to his residence, the said wagon in which he was situated was suddenly and unexpectedly started thereby accidentally throwing him, the said Louis Meyer, violently against an iron handhold or seat guard upon the seat of the said wagon, thereby bruising the back or side of the said Louis Meyer, and at the time of receiving the such bruise or injury the said Meyer was afflicted with a latent or dormant cancerous growth or formation within his body and which growth or formation was affected by said bruise and excited and aroused to rapid growth causing the erosion of blood vessels within the body of said Louis Meyer and consequently hemorrhages which resulted in his death

on the 12th day of May, 1911, independently and exclusively of all other direct causes; that is to say that he would not have died as and when he did if the accident had not occurred; that while death from the cancer might have resulted, it would have been deferred until a later period of his life, you will find for the plaintiff."

It is contended that that instruction is wrong and that it involves an erroneous construction of the terms of the policy in that it permits a recovery even though the previously existing disease has co-operated in producing death. The determination of this question involves the construction of that part of the policy which limits liability to "bodily injuries sustained through accidental means resulting directly, independently and exclusively of all other causes in death." The effect of this instruction was to make the company liable under the contract, if death resulted when it did on account of the aggravation of the disease from the accidental injury even though death from the disease might have resulted at a later period, regardless of the injury. We are of the opinion that that is the correct interpretation of the contract, for if the injury, by aggravating the disease, accelerated the death of the assured, then it resulted "directly, independently and exclusively of all other causes." In other words, if death would not have occurred when it did but for the injury resulting from the accident, it was the direct, independent and exclusive cause of death at that time, even though the death was hastened by the diseased condition. This construction of the contract is sustained by some of the authorities.

*Fetter* v. *Fidelity and Casualty Company*, 174 Mo. 256, involved the construction of a similar policy. In that case the assured sustained an accidental injury which caused a rupture of the right kidney, the lower part of which was found to be cancerous. The rupture was between the normal and cancerous parts, and the hemorrhages which caused the death were from the rupture. The court, in disposing of the matter, said:

"The contention of the defendant is that the accident would not have resulted in the rupture if the cancer had not been there. * * * On this testimony the defendant says that the death was not the result of the accident 'independent

of all other causes.' If we should give to those qualifying words of the policy the meaning that is now claimed by defendant they were intended to have, there would be scarcely any limit to their nullifying influence. Doctor Hall said in explanation of what has just been quoted, of his testimony: 'The predisposing cause is the remote cause.' If, therefore, there could be discovered in a man's body after his death any condition, before undiscovered and unsuspected, that, under scientific tests, would render him more amenable to accidents or less capable of resisting their influence, the policy would not cover the case.''

In a later case decided by the same court, where liability accrued only ''if death should result solely from such injuries,'' the court said:

''We think the only reasonable interpretation to be placed upon this clause is to say that the injury must stand out as the predominant factor in the production of the result, and not that it must have been so virulent in character as necessarily and inevitably to have produced that result, regardless of all other conditions and circumstances. People differ so widely in health, vitality, and ability to resist disease and injury that what may mean death to one man would be comparatively harmless to another, and therefore the fact that a given injury may not be generally lethal does not prevent it from becoming so under certain conditions; and if, under the peculiar temperament or condition of health of an individual upon whom it is inflicted, such injury appears as the active, efficient cause that sets in motion agencies that result in death, without the intervention of any other independent force, then it should be regarded as the sole and proximate cause of death. The fact that the physical infirmity of the victim may be a necessary condition to the result does not deprive the injury of its distinction as the sole producing cause. In such case, disease and low vitality do not rise to the dignity of concurring causes, in having deprived nature of her normal power of resistance to attack, appear rather as the passive allies of the agencies set in motion by the injury.'' *Driskell* v. *United States Health & Accident Ins. Co.*, 93 S. W. 880.

The same rule was announced in the still later case of *Beile* v. *Travelers Protective Association*, 135 S. W. 497.

The Nebraska court announced the same conclusion in the case of *Modern Woodmen* v. *Shryock*, 54 Neb. 250, 39 L. R. A. 826.

There are cases relied on by counsel for appellant which seem to hold the other way. *National Masonic Accident Association* v. *Shryock*, 73 Fed. 774; *White* v. *Standard Life & Accident Co.*, 95 Minn. 77; *Commercial Travelers Association* v. *Fulton*, 79 Fed. 423; *Stanton* v. *Travelers Ins. Co.* (Conn.) 78 Atl. 317. An examination of those cases discloses the fact that a somewhat different contract was involved, and we think the distinction between the provisions of the contracts is controlling. There the contracts contained an additional provision that the insurance did not cover "any death which resulted wholly or in part directly or indirectly from disease or bodily infirmity." Where accidental injury aggravated a disease, and thereby hastened death so as to cause it to occur at an earlier period than it would have occurred but for the accident, it was the direct, independent and exclusive cause of death at that time. But, on the other hand, if death resulted from the co-operation of a pre-existing disease and an accidental injury, and would not have occurred from the injury save with the co-operation of the disease, then it resulted in part, indirectly, from the disease, so as to exclude liability under a policy which embraced the last stated clause. The force of this distinction and the result of the cases which have arisen under it is clearly recognized in the very able and instructive opinion of Judge Seaman, speaking for the United States Circuit Court of Appeals for the Seventh Circuit, in *Illinois Commercial Men's Assn.* v. *Parks*, 179 Fed. 794: The phrase, "resulting directly, independently and exclusively in death," refers to the efficient or, as some courts speak of it, the predominant, cause of death at the time it occurs. In other words, it means the proximate cause; whereas the other phrase employed in some policies excepting liability where death has resulted "wholly or in part, directly or indirectly, from disease or bodily infirmity," refers to another contributing cause whether proximate or remote.

In *Freeman* v. *Mercantile Accident Association*, 156 Mass. 351, the court, in undertaking to define what is the proximate cause where some other cause contributed to the result, said:

"The law will not go farther back in the line of causation than to find the active, efficient, procuring cause, of which the event under consideration is a natural and probable consequence, in view of the existing circumstances and conditions. The law does not consider the cause or causes beyond seeking the efficient, predominant cause, which, following it no farther than those consequences that might have been anticipated as not unlikely to result from it, had produced the effect. An injury which might naturally produce death in a person of a certain temperament or state of health is the cause of his death, if he dies by reason of it, even if he would not have died if his temperament or previous health had been different."

It must be remembered that the policy is couched in language chosen by the insurer, and must be given the construction, of which it is susceptible, most favorable to the assured. *American Bonding Co.* v. *Morrow,* 80 Ark. 49.

Moreover, it is the duty of courts to give such construction to a policy, if the language used fairly admits, as will make it of some substantial value and carry out the intention expressed therein that liability is incurred where death occurs from accidental injury. If liability is to depend upon the physical condition of the assured as contributing in some degree to death, then it should be so stated plainly in the policy. We are of the opinion that the language of this policy does not mean that there shall be no liability in case death results from the aggravation of a pre-existing disease.

It is next contended that the policy is void on account of alleged breaches of warranties as to statements of physical condition and medical attention, and as to age at the time of issuance of the policy. The assured had, as before stated, been carrying insurance with appellant for many years, the policy being renewed from year to year, sometimes by issuance of a new policy, sometimes by renewal certificate. The renewal policy last issued contained copies of the statements made at the time of the issuance of the original policy as to sound health and medical attention, and contained a warranty of the truth thereof. It does not appear that a new application was made or that questions were again propounded and answered. Under those circumstances the warranty is deemed to have related to conditions as they existed at the time the statements

were originally made. "Statements should be construed with reference to the time made unless they expressly or by implication refer to the future." *Supreme Lodge, Knights of Pythias,* v. *Davis,* 90 Ark. 264.

The misstatement of the age of the assured appears to have been inadvertently inserted in the policy by agents of the company, and it, therefore, can not claim a forfeiture on that account. *Gray* v. *Stone,* 102 Ark. 146; 143 S. W. 114.

It is insisted that the court erred in permitting medical experts, introduced by plaintiff, to testify concerning statements found in books written by certain medical authorities and the rule is invoked that books of that character are not admissible as affirmative or original evidence. The books were not introduced in evidence, but the experts who testified merely referred, in giving their opinions, to the medical authorities and stated in substance, the result thereof. This was competent. See 3 Chamberlyne's Modern Law of Evidence, § § 2528 and 2529.

The defendant, for the purpose of proving the physical condition and state of health of the assured for several months immediately preceding his death, offered the testimony of certain physicians who had attended the assured, and who derived the information sought to be adduced from the witness stand by reason of such attendance. The plaintiff objected on the ground that the relation was privileged and the testimony incompetent, and the court sustained the objection. It is contended on behalf of defendant that the privilege was waived by the plaintiff in furnishing, as a part of the proof of loss, the affidavit of one of the attending physicians. The policy itself does not contain any provision waiving the privilege as to the testimony of attending physicians, nor does it, in terms, require the presentation, as a part of the proof of loss, of the certificate of a physician. The certificate was merely furnished at the special request of the defendant in an effort to secure an amicable adjustment and settlement. The certificate was not introduced in evidence by plaintiff for the purpose of establishing the truth of its contents. It was incidentally read in evidence as a part of the deposition of one of defendant's officers for the purpose of maintaining another

issue. Plaintiff did not tender an issue as to the truth of the matter set forth in the affidavit. We can, therefore, discover no valid reason upon which a waiver can be founded. According to the weight of authority, where a policy of insurance does not itself contain a provision for waiver of the privilege, the introduction in evidence of certificate of death given by a physician of the insured does not waive the provisions of the statute against physicians testifying concerning information received in the course of professional employment. See *Frazier* v. *Metropolitan Insurance Co.*, 141 S. W. 936. But whatever may be the state of the law on that question as established by the authorities, even if the rule be otherwise than as above stated, it can not be extended to cover a case like this, where the affidavit or certificate of the physician is not furnished pursuant to the requirements of the policy, but merely as a voluntary act in an effort to secure a settlement.

The last assignment of error urged upon our attention relates to the allowance of damages and attorney's fees. It is contended that the certificate of the physician furnished as above stated, with the proof of loss, shows that death did not result from the accidental injury and that, therefore, the company was justified in refusing payment, and should not be subjected to the payment of damages and attorney's fees because in the end liability was established. The evidence was sufficient to show a distinct demand for adjustment and payment of the loss, and the plaintiff has recovered the sum demanded. The case falls, therefore, clearly within the express language of the statute, which provides that, if the company shall fail to pay, within the time specified in the policy, after the demand therefor, it shall be liable for damages and attorney's fees. The plaintiff complied with the terms of the policy by furnishing proof of loss within the time specified and in an effort to secure a settlement furnished such other certificates as the company's agents requested. Upon the presentation of these matters the controversy arose as to whether there was any liability, the plaintiff demanding payment of the policy and the defendant denying liability. The fact that defendant found some justification in the certificates furnished for its contention that death did not result from the accident, does not put the case outside of the statutes

providing for assessment of damages and attorney's fees where the liability is established and timely demand for payment has been made.

Our conclusion, upon the whole case, is that liability of the defendant has been established by legally sufficient evidence and that the case was tried upon the correct theory and that no error appears in the record. The judgment is therefore affirmed.

KIRBY, J., dissents.