## CLAY COUNTY COTTON CO. v. HOME LIFE INS. CO. OF NEW YORK.

### No. 11581.

Circuit Court of Appeals, Eighth Circuit.

Aug. 26, 1940.

G. B. Oliver, Jr., of Little Rock, Ark. (C. T. Bloodworth, of Poplar Bluff, Mo., on the brief), for appellant.

Charles D. Frierson, of Jonesboro, Ark., for appellee.

Before WOODROUGH and THOMAS, Circuit Judges, and BELL, District Judge.

BELL, District Judge.

This is an action by appellant against appellee to recover on an insurance policy issued December 26, 1924, on the life of Fred B. Sprague. At the close of the plaintiff's case the court directed a verdict for the defendant, and this appeal is from the judgment entered thereon.

The insured was president of a bank at Corning, Arkansas, and, with three partners, was also a dealer in cotton at that place under the name of the Clay County Cotton Company. It appears that the partners agreed to take $20,000 insurance on the life of each of them and name the business as beneficiary. The insured on November 29, 1924, signed and submitted to the appellee two applications, each for $10,000 life insurance. In the medical examinations, analysis of his urine revealed "numerous pus cells in every field—too numerous to count." Later, he signed an application for $15,000 which was submitted to the company in lieu of the two for $10,-000 each. This application was accepted at a premium for forty-eight years of age in-

stead of forty-two, the actual age of the applicant. Each of the three partners of Sprague purchased $20,000 insurance on his life and an annual premium on all the insurance was paid in advance. The Clay County Cotton Company, a partnership, was named the beneficiary in all the policies. Later the partnership was incorporated and the corporation, appellant herein, became the beneficiary.

The insured, on January 30, 1925, applied for the accidental death benefit contract in connection with his policy and, in consideration of an additional annual premium of $18.75, the company agreed to pay (in addition to the amount payable under the policy) the sum of $15,000 on receipt of "due proof of death of the insured and that such death occurred while the said policy and this contract are in full force and effect and resulted solely from bodily injury caused by external means of an accidental or violent nature, and that death occurred within ninety days after such injury and as a direct result thereof, exclusive of all other causes."

The insured, with a cousin, Waller Sprague, left Charleston, Missouri, about eight o'clock a. m. March 15, 1938, in an automobile to inspect a farm some seven miles away. A portion of the farm had been examined and the insured expressed a desire to see the wheat which was not easily accessible by automobile; whereupon, it was concluded to go on horseback. A horse was saddled for decedent by an employee at the farm and led across a wagon tongue. The decedent stepped upon the tongue and then mounted the horse. As he did so the horse made two or three jumps or lunges but did not unseat the decedent. He was thrown severely forward and backward in the saddle and almost thrown off. He rode the horse a mile and a half, during which the horse, according to the testimony of one who accompanied him, "was fractious and jerked Mr. Sprague and shook him up several times."

The decedent and his cousin returned to Charleston for lunch, revisited the farm in the afternoon, later drove to East Prairie, a distance of ten miles, and returned to Charleston about seven p. m. The decedent retired early without having made any complaint of illness or injury. Later in the evening the decedent called his cousin and stated that he was sick. The cousin found him nauseated, vomiting, perspiring freely and suffering a heart attack. A local physician was called, also another physician who had treated him for many years was called from St. Louis. These doctors testified that when they reached decedent he was in shock and a state of general collapse. The decedent told them that he felt fine when he got on the horse but it "jumped or something and he had a severe distress across his chest which lasted about thirty minutes and then left." He became worse and died on the fifth day.

The policy was in force at the time of decedent's death and the claim on the ordinary life feature was paid. The claim on the accidental death contract was rejected and this action for recovery was commenced.

The question presented is whether death resulted solely from bodily injury caused by external means of an accidental or violent nature. As in many cases, the controversy here is whether death resulted from injuries caused by the jumping and lunging of the horse or from a diseased condition of the decedent.

The decedent had been in poor health from twelve to fifteen years prior to his death. The Metropolitan Life Insurance Company issued a policy of $5,000 on his life in August, 1920, and another for $5,000 in February, 1929. The Aetna Life Insurance Company issued him a policy for $10,000 in March, 1921. The Home Life Insurance Company, appellee, issued its policy for $15,000 on December 26, 1924. At the time he applied to the last-named company for insurance the urinalysis revealed a diseased condition of the kidneys and he was then suffering from severe headaches. In October, 1929, his heart was affected. In 1930 the doctor advised removal of the right kidney and periodically for two years irrigated the kidneys by the use of urethral catheters. In March, 1930, he was examined by Dr. Finnegan of St. Louis for the first time, who found hypertension, pylonephritis, myocarditis, arterio sclerosis, a stone in the right kidney, and a diseased gall bladder and appendix. The right kidney was removed in April, 1932, after which the decedent improved in health. The appendix was removed in September, 1934. One doctor found coronary disease in March, 1936, and expressed an opinion that it had been in existence for two or three years. In November, 1933, decedent presented a claim to the Metropolitan Life Insurance Company based on total disability. He sued on this claim in February,

1936, and obtained a judgment retroactive to May, 1934. A similar claim was allowed by the Aetna Insurance Company without contest.

Proof of death to the insurance companies gave the cause of death as uremia with coronary thrombosis a contributing cause. Accident was not mentioned in any of the proofs of death. It was while the claim for insurance on the policy of appellee was in process of settlement that appellant notified the company that a claim would be made on the accidental death contract.

In considering this case, a number of well-recognized principles must be observed: (1) All facts that the plaintiff's evidence reasonably tends to prove, and all inferences that reasonably may be drawn therefrom, must be assumed to have been established. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; Lumbra v. United States, 290 U.S. 551, 54 S.Ct. 272, 78 L.Ed. 492; Columbian National Life Insurance Company v. Comfort, 8 Cir., 84 F. 2d 291; (2) The weight of uncontradicted evidence and the credibility of witnesses are questions for the determination of the jury. Elzig v. Gudwangen, 8 Cir., 91 F.2d 434; (3) The question whether an insured has died as the result of accidental causes is for the jury, provided the question is uncertain either because of a conflict in the evidence or because fair-minded men will honestly draw different conclusions from uncontradicted facts. Gunning v. Cooley, supra; Best v. District of Columbia, 291 U. S. 411, 54 S.Ct. 487, 78 L.Ed. 882; Southern Pacific Company v. Ralston, 10 Cir., 67 F.2d 958; Mutual Life Insurance Company v. Hatten, 8 Cir., 17 F.2d 889; Svenson v. Mutual Life Insurance Company, 8 Cir., 87 F.2d 441; Travelers Insurance Company v. Melick, 8 Cir., 65 F. 178, 27 L.R.A. 629; (4) What caused, or could have caused, the death of the insured was a medical question and a proper subject for expert testimony, the weight of which was for the jury. New York Life Insurance Company v. Doerksen, 10 Cir., 64 F.2d 240; London Guarantee & Accident Company v. Woelfle, 8 Cir., 83 F.2d 325; (5) It is only where the evidence is so overwhelmingly on one side as to preclude an opportunity for reasonable minds to differ that the court should direct a verdict. Gunning v. Cooley, supra; People's Savings Bank v. Bates, 120 U.S. 556, 7 S.Ct. 679, 30 L.Ed. 754; Southern Pacific

Company v. Pool, 160 U.S. 438, 16 S.Ct. 338, 40 L.Ed. 485.

The Supreme Court of Arkansas has held that an insurance company is liable on its policy of accident insurance if death resulted when it did on account of an aggravation of a disease by accidental injury, even though death from the disease might have resulted at a later period regardless of the injury, on the theory that if death would not have occurred when it did but for the injury, the accident was the direct, independent and exclusive cause of death at the time. Fidelity & Casualty Company v. Meyer, 106 Ark. 91, 152 S.W. 995, 44 L. R.A.,N.S., 493; Maloney v. Maryland Casualty Company, 113 Ark. 174, 167 S.W. 845; Pacific Mutual Life Insurance Company v. Smith, 166 Ark. 403, 266 S.W. 279; Missouri State Life Insurance Company v. Barron, 186 Ark. 46, 52 S.W.2d 733; National Life & Accident Insurance Co. v. Shibley, 192 Ark. 53, 90 S.W.2d 766; Prudential Insurance Company v. Croley, Ark., 135 S.W.2d 322.

In the Meyer case, where the foregoing principle was first announced, the insured was standing in a wagon when a sudden start of the horses threw him against the seat, striking his right side and back. He was confined to his bed until his death several weeks later. A few days after the accident he had hemorrhages from the mouth and bowels. An autopsy revealed a diseased condition of the pancreas and duodenum. The doctors testified that it was a cancer of several months' standing and that the hemorrhages were caused by a rupture of the duodenum. It was held that the evidence was sufficient to sustain a finding that the rupture was caused by the fall. In passing on an instruction, the court said [106 Ark. 91, 152 S.W. 997, 44 L.R.A.,N.S., 493]: "The effect of this instruction was to make the company liable, under the contract, if death resulted when it did on account of the aggravation of the disease from the accidental injury, even though death from the disease might have resulted at a later period, regardless of the injury. We are of the opinion that that is the correct interpretation of the contract, for if the injury, by aggravating the disease, accelerated the death of the assured, then it resulted 'directly, independently and exclusively of all other causes.' In other words, if death would not have occurred when it did but for the injury resulting from the accident,

it was the direct, independent, and exclusive cause of death at that time, even though the death was hastened by the diseased condition."

In the Maloney case the court instructed the jury that if disease or some factor other than the injury contributed to the death of the insured, he could not recover. The Meyer case was reviewed, the instruction held erroneous, and a judgment for the insurer reversed. In the Smith and Barron cases the court again sustained its holding in the Meyer case. In the Shibley case the insured was struck on the head by a falling crutch which ruptured a blood vessel that caused a hemorrhage and death within a few hours. The insured was suffering from a disease commonly known as tropical sprue which, according to the testimony of the doctors, rendered the blood vessels fragile and more easily ruptured than in a normal person. The Supreme Court approved an instruction, as follows [192 Ark. 53, 90 S.W.2d 768]: "If you believe from a preponderance of the evidence that said Shibley sustained an injury by a crutch falling and striking upon his head and temple and that said injury was the proximate cause of his death which followed shortly thereafter, then you are instructed that the plaintiff would be entitled to recover in this case even though you may believe that the condition of health produced by the Tropical Sprue left a condition whereby the accident would the more readily produce death."

■ The Supreme Court of Arkansas, in this year, again approved the Meyer case, Prudential Insurance Company v. Croley, supra; so, whatever may be said of the doctrine, it is the settled rule in Arkansas.

In this connection, attention is directed to Scanlan v. Metropolitan Life Insurance Company, 7 Cir., 93 F.2d 942, and Nelson v. Business Men's Assurance Company of America, 7 Cir., 108 F.2d 363.

There was an accident that could have injured the insured. Three witnesses saw and described the lunging of the horse, a young, high-spirited animal. One witness said he feared for the safety of the insured. The insured did not complain of pain or injury at the time he was riding the horse, but told the doctors when they called that night of the pain in his chest after the horse had jumped with him.

The testimony of greatest significance on the question before us comes from Dr. Finnegan. He testified that when the horse plunged it shook the insured and threw an extra load on the heart, which caused a thrombosis of a very small artery of the heart; that this accounted for the severe distress across the chest at the time; that this condition remained until evening; that the heart on account of this thrombosis failed to get proper nourishment and in the evening a larger area thrombosed; that this accounted for the attack as the insured was about to retire; that the heart, being unable to function properly, failed to send proper nourishment to the kidney and it collapsed; that the kidney, failing to function, was followed by uremia; that "my opinion is if he had not ridden the horse he probably would be alive today. I don't think he would have suffered thrombosis and died if the horse had been normal and not plunged. My opinion is that the plunging of the horse was the direct cause of his death. I don't think, except for that incident, he would have died at that time or anything like that time, although he could have. There is no doubt in my mind about this."

■ This court in United States v. Thornburgh, 8 Cir., 111 F.2d 278, held that "A reviewing court is not always required to accept as substantial evidence the opinions of experts, and where it clearly appears that an expert's opinion is opposed to physical facts or to common knowledge, or to the dictates of common sense, or is pure speculation, such an opinion will not be regarded as 'substantial evidence.'" In that case, a doctor, without records, testified as to his recollection of the condition of a patient examined by him some twenty years before. This testimony formed the basis for an expert opinion of another doctor who had never examined the patient and who had no first-hand information of his condition. Such testimony alone was not considered sufficiently substantial to sustain a verdict. In the case now before us Dr. Finnegan had treated the decedent regularly and continuously for a period of seven years. He knew the condition of the decedent as well as it is possible for a doctor to know the condition of his patient. This doctor, and others who likewise were familiar with the insured's condition, testified at length and described his physical condition for many years prior to his death. The portion quoted is a summarized opinion of an expert based on facts of which he had actual knowledge. The record indi-

cates that his opinion was positive and given without reservation. The weight and value of this testimony was for the jury and it could have concluded therefrom that the insured would not have died when he did except for the accident. The evidence in this case removes it from the realm of speculation and conjecture and presents a different situation from that found in National Life & Accident Insurance Company v. Hampton, 189 Ark. 377, 72 S.W.2d 543, and Lincoln National Life Insurance Company v. Erickson, 8 Cir., 42 F.2d 997.

■ The full and complete knowledge of the appellee of the insured's physical condition at the time the application for the insurance was made and the policy issued is a feature of this case that should not be overlooked. A paragraph in appellee's brief states: "Mr. Sprague, the insured, was probably the world's best patient for physicians. He was a frail physical shell, slowly dying upon his feet, almost from the time the insurance policy was issued, Dec. 26, 1924. His kidneys were seriously diseased when the policy was issued, and for that reason he paid a premium based upon an age rated six years above his actual age." There was no issue of misrepresentation or fraud. There is no contention by the appellee that it was deceived or that it was not fully informed as to the state of the insured's health. Indeed, it was in no position to make such contentions because its own examiners found pus in the urine—an unmistakable signal of disease, and because the premium on the policy was fixed at rates for a person six years older than the insured. Moreover, it is not unreasonable to conclude that insurance in the sum of $60,000 on the lives of the other partners was considered in the transaction. The insurer simply accepted an extra hazard when it knowingly issued its policy to a diseased man, and it is proper to assume that it believed the additional considerations adequate compensation for doing so. It knew that the insured might not live the time allotted to him by mortality experience; so, for the considerations it received, it contracted to pay the face of the policy to the beneficiary on the death of the insured, and it further contracted, for an additional consideration, to pay an additional sum if death resulted from accident. It knew that diseased persons ordinarily are more likely to be affected by accidents than normal persons. Furthermore, it knew the laws of the state of Arkansas where the contract was made. When an insurance company issues an accident policy to a diseased person with full knowledge of his condition and such condition becomes a contributing factor to accidental injury or death, the insurer, because thereof, should not be relieved of liability. This court has said: "Although aware of great discrepancies in physical vigor between individuals, insurance companies issue accident policies to the weak as well as to the strong; to the old as well as to the young. And to these contracts the companies are held. That an insured is frail or is in a generally weakened condition does not relieve the company from its obligations under the policy." Preferred Accident Insurance Company v. Combs, 8 Cir., 76 F.2d 775, 781. Furthermore, the policy involved in this case does not contain the provision found in many policies that the insurer is not liable if death is caused directly or indirectly from disease.

■ The appellee contends that in directing a verdict in this case the court was merely applying the procedure of the forum, that the federal decisions and not the law of Arkansas control; or in other words, that the problem presented is one of adjective and not substantive law. The question presented by the motion to direct a verdict was whether a cause of action had been proved, which clearly is a question of substantive law and the state law applied. This is too definitely settled to admit of further agreement. Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188, 114 A.L.R. 1487.

Under the liberal rule of the Arkansas decisions, the case should have been submitted to the jury and, therefore, is reversed and remanded for a new trial.