The Travelers Insurance Company *v.* Johnston.

4-6750                                        162 S. W. 2d 480

Opinion delivered May 18, 1942.

*Hill, Fitzhugh & Brizzolara,* for appellant.

*Warner & Warner,* for appellee.

Smith, J. Appellee Johnston brought this suit to recover on two accident insurance policies issued to him by appellant insurance company. Each policy insured him against loss resulting from bodily injury effected directly and independently of any other cause through external, violent and accidental means, subject to the provisions and limitations in the policies. One of these provisions was that the policies did not cover accident, injury, disability, or death caused, directly or indirectly, wholly or partly, by bodily or mental infirmity or any other kind of disease. On February 11, 1941, about 7:30

p. m., appellee was seriously injured when he fell out of a taxicab in Memphis. It is admitted that his left hip was broken by the fall, and that he has since been totally and continuously disabled.

About two weeks before his injury appellee began to suffer pain in his left hip while bearing weight thereon, and upon advice of his physician he commenced to use crutches. His right leg was not affected. Appellee's physician advised him to go to the Campbell Clinic in Memphis for examination and treatment, and on February 10th he acted upon this advice. He left Fort Smith, accompanied by his wife, in his car about 2:30 p. m. Mrs. Johnston drove from Fort Smith to Paris, when appellee took the wheel and drove the remaining distance, about 260 miles, to Memphis, where they arrived about 10:30 p. m. On the next day, after spending the night at a hotel, appellee drove out to the clinic, where he was examined and X-rayed, and about noon was advised that he had Paget's disease, which the doctors testifying in the case defined as a chronic degenerative condition of the bones, in which there is an overgrowth of part of the bones and degenerative changes in other parts of the bones, the exact cause of which is not known. The medical testimony was to the further effect that the disease varies with the individual cases, but that persons afflicted with it ordinarily live their usual expectancy, and that the disease does not ordinarily cause the afflicted person to fall.

After this first examination appellee was told to return to the clinic the following day for further examination and treatment. The afternoon was spent in shopping, and appellee was fitted for a suit of clothes, and that night he and his wife started to a show. They went to the theater in a taxicab, and it was upon leaving the cab that appellee sustained his injury, which he testified occurred in the following manner: He and his wife were on the back seat of the cab, he being on the right side. The cab stopped about 1½ or 2 feet from the curb; the driver opened the rear door, and appellee got up from his seat and put his crutches on the pavement to alight, and he then tripped or stumbled in some manner, falling

head first out of the cab, down on the pavement between the curb and the cab. He was in the act of getting out of the cab when the accident occurred; the driver opened the door and he fell out of the cab on the pavement, falling forward out of the cab through the open door. He thought that when the cab stopped he probably put his weight on the right foot and a little on his left and stood up inside the cab, putting the crutches down on the pavement between the cab and the curb, and he then pitched or fell forward from the cab, striking his head in falling against an advertising sign on the edge of the curb. He thought he probably hooked his heel on the edge of the cab and tripped or stumbled, causing him to fall head first out of the cab.

With the assistance of his wife, appellee walked into the lobby of the theater, where he fainted. After regaining consciousness he was taken to the clinic, where his left hip was again X-rayed and found to have been broken. The X-ray pictures demonstrate that appellee's injury resulted from the fall; the pictures taken before the fall did not show a fracture; those taken after the fall did disclose a fracture.

In contradiction of this version of the manner in which appellee was injured, given by him at the trial from which is this appeal, there was offered in evidence a statement signed by appellee, and also the complaint filed in his behalf against the taxicab company. This statement contradicts materially the testimony given by appellee at the trial; but the complaint does not. The complaint was predicated upon the proposition that the chauffeur driving the cab failed to give appellee the assistance in alighting from the cab which he should have done, and that the chauffeur was negligent in the manner in which he had parked the cab. These conflicts, such as they are, presented a question for the jury. Evidently, the jury attached but little weight to the statement, in view of its inaccuracy and the circumstances under which it was obtained.

An operation was performed during the morning of the 13th, at which time a Smith-Peterson nail was introduced across the fracture of the neck of the femur to hold

it in position. Both of appellee's legs were placed in casts, extending from the middle of his body down to and over his feet, and weights were placed on his feet to maintain proper position. Opiates were constantly used to make the pain endurable, and for ten days appellee slept the major part of the time. He remained in the hospital until April 14th. There developed an extreme case of nausea, caused by the use of the opiates and the shock from the injury.

Appellant's claim agent, who prepared the statement, called upon appellee on February 20th, which was just a week after the operation, and he remained there about an hour and a half, during which time he wrote the answers given by appellee to the questions asked, and from the notes thus made the statement was prepared which appellee signed the following day. Appellee's wife was in the hospital room intermittently during this interview, and she told the claim agent her husband was in no condition to make a statement, and that appellee would fall asleep between questions asked him, when he would be aroused by another question.

We conclude, therefore, that the jury had the right to accept as true appellee's version of the manner in which he sustained the injury, disregarding the statement which he had signed.

In this connection, it may be said that the testimony does not show that appellee had become disabled. He had no trouble with his right leg, and used crutches to avoid the pain caused by placing weight on his left leg. During the two weeks he used crutches before going to Memphis he continued to perform his usual and customary duties, going back and forth to his office and getting in and out of his car two or three times every day without assistance, and he drove his car to and from the clinic on the day of his injury.

There was a verdict and judgment for the benefits provided for in the policies, with statutory penalties and attorney's fees, from which is this appeal.

It is provided in each of the policies that "This insurance shall not cover accidents, injury, disability,

death or other loss caused directly or indirectly, wholly or partly, by bodily or mental infirmity. . . . or by any other kind of disease." And it is earnestly insisted that under this exemption from liability a verdict should have been directed in favor of the appellant insurance company, for the reason that appellee's disease was a contributing, if not the sole, cause of his injury.

Two physicians testifying in appellant's behalf expressed opinions supporting that contention; but their opinion is not conclusive of this issue, which was, at last, a question of fact to be determined by the jury. The basis of their opinion appears to have been that appellee had a diseased leg, and used crutches, which made him less agile. The surgeon at the clinic who performed the operation testified that it would not be anticipated that appellee would fall in getting out of the cab merely because he had Paget's disease and was using crutches, and that even though appellee did not have normal agility there was no reason why he would fall under ordinary circumstances, and that while a person using crutches moves slower he moves with greater care, and it was not to be expected that appellee would fall in getting out of the cab.

The court gave of its own motion all the instructions given in the case, and refused to give any other, to which action exceptions were duly saved. These instructions read as follows:

"1. If you find from a preponderance of the evidence that the plaintiff in alighting from the taxicab suffered a hip injury therefrom, then the question for you to determine is whether the injury was approximately caused through external violent and accidental means directly and independently of other causes, or that said injury was caused by the physical condition of the plaintiff at the time.

"2. If you find from a preponderance of the evidence that he sustained a broken hip while attempting to alight from the taxicab, and you further find that said injury was the proximate cause of his disability, then you are instructed to find for the plaintiff, unless you

find that he was afflicted with Paget's disease, and that said disease wholly or in part directly or indirectly contributed or concurred in causing him to fall.

"3. The fact that plaintiff had Paget's disease might have been a necessary element in producing the fall, yet such disease alone does not deprive the plaintiff of the right to recover if you further find from a preponderance of the evidence that the proximate cause of the fall was an accident.

"4. If you find from the evidence in this case that the plaintiff's physical condition at the time he was riding in the taxicab contributed or concurred either directly or indirectly, wholly or in part to his fall, then in such event the plaintiff is not entitled to recover and you must find for the defendant. In other words, if the fall sustained by the plaintiff was not the direct and proximate cause of the injury, but that the same resulted in whole or in part from his physical infirmities, to-wit, Paget's disease, then you are instructed that the plaintiff would not be entitled to recover.

"A. Proximate cause as is used in these instructions means the immediate, efficient cause without which the result could not and would not have happened."

After giving these instructions the court gave orally the usual instructions on burden of proof, etc., to which no objection was made.

In our opinion, these instructions declared the law as favorably to appellant's defense as it had the right to ask.

Many cases from other jurisdictions, and all of our own cases, on the subject, are cited in the briefs of opposing counsel. We find it unnecessary to go beyond our own cases, and we cite only one other case, that of *Clay County Cotton Co.* v. *Home Life Ins. Co. of New York*, 113 Fed. 2d 856, for the reason that it cites our cases bearing directly on the issue under consideration. These are: *Fidelity & Casualty Co.* v. *Meyer*, 106 Ark. 91, 152 S. W. 995, 44 L. R. A., N. S., 493; *Maloney* v. *Maryland Casualty Co.*, 113 Ark. 174, 167 S. W. 845; *Pacific Mutual*

*Life Ins. Co.* v. *Smith,* 166 Ark. 403, 266 S. W. 279; *Missouri State Life Ins. Co.* v. *Barron,* 186 Ark. 46, 52 S. W. 2d 733; *National Life & Accident Ins. Co.* v. *Shibley,* 192 Ark. 53, 90 S. W. 2d 766; *Prudential Ins. Co.* v. *Croley,* 199 Ark. 630, 135 S. W. 2d 322.

Counsel for appellant cite cases which conflict with these, but we adhere to the rule which our own cases have declared. These all follow and approve the case of *Fidelity & Casualty Co.* v. *Meyer,* 106 Ark. 91, 152 S. W. 995, 44 L. R. A., N. S., 493. This Meyer case has been cited and approved by so many cases in our and other jurisdictions that counsel for appellee say it is now in accord with the weight of authority.

In the Clay county case, *supra,* the facts were that the insured was afflicted with a number of diseases, all of a serious nature, and the opinion quotes from one of the briefs the statement that the insured was a "frail physical shell, slowly dying upon his feet." The insured mounted and rode a horse, whose cavortings accentuated and precipitated the heart trouble from which the insured suffered, resulting in his death.. The opinion states that "The question presented is whether death resulted solely from bodily injury caused by external means of an accidental or violent nature." The district court had directed a verdict in favor of the insurance company, which was reversed on appeal, it being said that "Under the liberal rule of the Arkansas decisions, the case should have been submitted to the jury."

Our latest case on the subject is that of *Prudential Insurance Co.* v. *Croley,* 199 Ark. 630, 135 S. W. 2d 322, which reaffirms the holding in the Meyer case, *supra,* and repeats the quotation there appearing from the case of *Freeman* v. *Mercantile Mutual Accident Ass'n,* 156 Mass. 351, 30 N. E. 1013, 17 L. R. A. 753, reading as follows: "The law will not go further back in the line of causation than to find the active, efficient, procuring cause of which the event under consideration is a natural and probable consequence, in view of the existing circumstances and conditions."

In the Croley case, just cited, the policy sued on contained this clause: "Accidental death benefit shall be

payable upon receipt of due proof that the death of the insured occurred . . . as a result, directly and independently of all other causes, of bodily injuries, effected solely through external, violent and accidental means, of which . . . there is a visible contusion or wound on the exterior of the body. Provided, however, that no accidental benefit shall be payable if the death of the insured resulted . . . directly or indirectly from bodily or mental infirmity or disease in any form.''

The insured in that case was injured as a result of an automobile accident on a cold rainy day. He was taken to the hospital, where, in violation of instructions, he exposed himself to the elements a second time, and as a result of this imprudence contracted pneumonia, from which he died. The testimony of the attending physician was that the exposure, which included getting wet on the day of the injury, had some bearing on the later development of pneumonia, as did also a pre-existing asthmatic bronchitis from which the insured was a sufferer. Yet, notwithstanding this undisputed testimony, we held that the trial judge, sitting as a jury, was warranted in finding that the cause of death was the injury received in the automobile accident.

So, here, we think the testimony warranted the giving of the instructions herein set out and the finding of the jury, based thereon, that appellee's fall from the cab was an accident for the consequences of which the insurer was liable; and this is true although the jury might have found that appellee's hip would not have been fractured if he had not been afflicted with Paget's disease. However, the testimony of the surgeon who attended appellee is to the effect that a fall such as appellee sustained might have broken the hip even though appellee had not been afflicted with Paget's disease.

It is argued that the policies sued on do not insure against accidents, but only against bodily injuries caused through accidental means. This contention is decided adversely to appellant's contention in the case of *Travelers' Protective Ass'n* v. *Stephens,* 185 Ark. 660, 49 S. W. 2d 364. The opinion in that case recites the contention there made, ''that there is a technical difference between

the term 'accident' and the term 'accidental means,' as used in the policy sued on and in the constitution and by-laws of the association." The question arose over an instruction which told the jury that the terms "accident" and "accidental means" were synonymous, each meaning happening by chance; unexpectedly taking place; not according to the usual course of things, or not as expected. In approving this instruction it was there said: "It would be unreasonable for the court to give a construction to the contract which it is manifest was not contemplated by the parties when the policy was issued and which would defeat the evident object of the contract of insurance. If the association had wished that the terms 'accident' and 'accidental means' should have had different meanings, the contract of insurance should have given the insured warning of that fact. The court correctly instructed the jury in accordance with the principles of law above announced. If the association used the terms 'accident' and 'accidental means' as synonymous, it cannot now complain that the court gave them the same construction."

We conclude that the testimony, under the instructions set out above, sustains the finding that appellee's injury was the result of an accident within the meaning of the policies, and the judgment will, therefore, be affirmed.