METROPOLITAN CASUALTY INSURANCE COMPANY
*v.* FAIRCHILD.

4-8898                     220 S. W. 2d 803

Opinion delivered May 30, 1949.

*Huie & Huie,* for appellant.

*John H. Lookadoo, James T. Gooch* and *Agnes F. Ashby,* for appellee.

MINOR W. MILLWEE, Justice.   This is an action to recover accident benefits on a policy of insurance issued to appellee, Warren C. Fairchild, by appellant, Metro-

politan Casualty Insurance Company of New York, on June 21, 1937. The policy provides for the payment of accident indemnity of $50 per month in case of total disability resulting from accidental injury. It specifically insures against "the effects resulting directly and exclusively of all other causes, from bodily injury sustained during the life of this policy solely through external, violent and accidental means".

Trial before the circuit court, sitting as a jury, resulted in a judgment in appellee's favor for accrued disability payments plus the statutory penalty and attorney's fee. The court found that appellee was totally disabled from coronary occlusion which was caused by an accidental injury within the meaning of the policy.

Appellant earnestly insists that the evidence is insufficient to support the finding and judgment of the trial court. The facts are undisputed. Appellee was employed as chief engineer and ice puller for the Southern Ice Company at Arkadelphia for several years prior to February 2, 1948. On that day he was engaged in thawing a frozen valve on a storage tank on top of the building housing the ice plant. The storage tanks were about sixteen feet above the roof of the building. Appellee stood with his left foot on a rod which connected and supported the tanks and was leaning over in a strained position with most of his weight resting on his left arm and reaching over with his right arm using a blowtorch to thaw the frozen valve. While in this strained position he felt a severe pain in his chest and left arm. When the pain grew steadily worse a physician was summoned who diagnosed the case as either a strained muscle or a coronary occlusion, based upon the history given by appellee. An electro-cardiogram was made about three days later which disclosed a coronary occlusion.

Appellee's physician testified that coronary occlusion is a disease caused by a rupture of a blood vessel in the heart. He gave it as his unqualified opinion, based on the case history and testimony of appellee, that the disease was not present prior to, but was precipitated by, the unusual strain from the position in which ap-

pellee was placed in thawing the frozen valve. It was also shown that appellee was healthy and accustomed to hard manual labor prior to the injury, which rendered him totally disabled. The effect of appellee's testimony is also that he had engaged in thawing valves before, but not on the same tank or in the strained position employed at the time he was stricken.

The conflict in the authorities on the question here presented is stated in 29 Am. Jur., Insurance, § 1006, as follows: "The difference of opinion as to whether accidental means may consist of an unusual and unexpected result of a voluntary and intended act is reflected in the cases dealing with death or injury resulting from exertion or strain. A number of cases—in accordance with the rule that accidental means cannot consist of a voluntary act, and that it is not enough that the death or injury is unusual and unexpected, but that the cause must also be unusual and unexpected—have denied recovery on account of death or injury resulting from the insured's voluntary act involving exertion, over-exertion, or strain. . . . In other cases, however, the view has been taken that where death or injury following over-exertion or strain is unforeseen and unexpected, and is not such as to naturally and probably result from the voluntary act done, but is rather an unusual result, such death or injury is an accident or is effected by accidental means." Opposing counsel have cited cases from other jurisdictions in support of their respective contentions. Many cases demonstrating the conflict in the authorities are collected in 111 A. L. R. 630, which supplements six prior annotations there cited.

In support of the second view as above stated, the textwriter cites Standard Life & Accident Ins. Co. v. Schmaltz, 66 Ark. 588, 53 S. W. 49, 74 Am. St. Rep. 112. There the insured, a mechanic, in lifting and removing a cylinder head from an engine, suffered a ruptured blood vessel in the stomach which caused his death. Justice Battle, speaking for the court in that case, said: "In the case before us the deceased was a strong, muscular man. The cylinder head removed weighed only eighty

pounds. He had been engaged in the service in which he was employed at the time of his death seven or eight years, and in that time had frequently removed cylinder heads without detriment to himself. Other machinists had been accustomed to do the same kind of work without injury. The jury could have reasonably inferred from the evidence that the death of the deceased was caused by 'external, violent and accidental means.' ''

In Continental Casualty Co. v. Bruden, 178 Ark. 683, 11 S. W. 2d 493, 61 A. L. R. 1192, we held that heat prostration, or sunstroke, suffered by one unexpectedly is within the terms of a policy insuring against bodily injuries sustained through external, violent and accidental means. See, also, U. S. Fidelity & Guaranty Co. v. Hoflinger, 185 Ark. 50, 45 S. W. 2d 866. The same result was reached in Washington Fid. Nat. Ins. Co. v. Anderson, 187 Ark. 974, 63 S. W. 2d 535, where death resulted from ptomaine poisoning caused by eating unwholesome food in a cafe.

It will be observed that in those cases which follow the first view as above expressed, the rule is premised in part upon the fact that the death or injury resulted from a voluntary or intentional act carried out in the ordinary way without the intervention of any unusual circumstances. So, if some unforeseen or involuntary movement of the body occurred which, in connection with the voluntary act, brought about the injury, the means would be accidental. This is the effect of the holding in the case of United States M. Acci. Asso. v. Barry, 131 U. S. 100, 9 Sup. Ct. 755, 33 L. Ed. 60, which this court cited with approval in the Schmaltz case, supra. There can be no material difference in principle in holding an injury to be by accidental means in the case of the rupture of a blood vessel in the stomach by handling a heavy piece of machinery, as in the Schmaltz case, supra, and in a case where the rupture of a blood vessel in the heart is caused by an unusual strain, as in the case at bar.

It is also clear from our cases that disability or death results solely and exclusively from accidental means although disease plays a part in the disability or

death, if the disease was due to the accident. We have also held in several cases that, if an accidental injury is the primary or proximate cause of death or disability, it is not material that disease contributed thereto. These cases are cited in the recent case of The Travelers' Insurance Co. v. Johnston, 204 Ark. 307, 162 S. W. 2d 480. In that case we reaffirmed the rule announced in Fidelity & Casualty Co. v. Meyer, 106 Ark. 91, 152 S. W. 995, 44 L. R. A., N. S. 493, where it was held (Headnote 1): "When an accident insurance policy limits liability to 'bodily injuries sustained through accidental means resulting directly, independently and exclusively of all other causes of death,' and it appears that death resulted from an aggravation of a latent disease to which the deceased was subject, an instruction is correct to the effect that the defendant insurance company is liable, under the contract, if death resulted when it did on account of the aggravation of the disease from the accidental injury, even though death from the disease might have resulted at a later period, regardless of the injury."

We conclude that the trial court, sitting as a jury, was warranted in finding that appellee suffered a disabling bodily injury sustained through external, violent and accidental means within the terms of the policy, and that the evidence is substantial and sufficient to support the judgment.

Affirmed.