DUKE *v.* LIFE & CASUALTY INSURANCE COMPANY OF TENNESSEE.

4-9440                                        238 S. W. 2d 631

Opinion delivered March 26, 1951.

Rehearing denied April 23, 1951.

*Wilson, Kimpel & Nobles,* for appellant.

*Dinning & Dinning,* for appellee.

MINOR W. MILLWEE, Justice. On February 23, 1948, William G. Duke died of a heart attack suffered while performing his usual duties as foreman of the band saw department of Pekin Wood Products Company at West Helena, Arkansas. The face amount of two five hundred dollar insurance policies issued to Duke by appellee, Life & Casualty Insurance Co. of Tennessee, was promptly paid to appellant, Bessie M. Duke, as beneficiary and the policies surrendered to appellee's agent.

On March 16, 1950, appellant filed this action under the double indemnity provisions of the two policies which provide for payment of accidental death benefits in case of, "bodily injuries affected solely through external, violent and accidental means, of which, except in the case of drowning, there is a visible contusion or wound on the exterior of the body of the insured, causing death, . . ."

The complaint alleges: "That on or about the 23rd day of February, 1948, while said policies were in full force and effect, William G. Duke received a personal

injury through external, violent and accidental means, to-wit: In the performance of his duties as foreman of the bandsaw department of the Pekin Wood Products Company of West Helena, Arkansas, William G. Duke exerted himself and exposed himself to cold, thereby aggravating a diseased heart which caused a severe heart attack, and accelerated his death.''

Appellee answered with a general denial and trial to a jury resulted in a verdict and judgment for the insurance company.

Insured was foreman of the band saw department located in the ''Town and Country Building'' of the Pekin plant. This building was separated from the ''Old Mill Building'' in which the ''glue room'' was located. The buildings were about 120 feet apart and a concrete walkway was used in going from one building to the other. The temperature in the Town and Country Building and the glue room of the other building was controlled by thermostat at about 70° Fahrenheit. On the day of his death the insured, while in the performance of his regular duties as foreman, walked from the Town and Country Building across the walkway to the Old Mill Building and through that building for a distance of several hundred feet to the glue room. About thirty minutes later he returned to the band saw department and was standing in the middle of the building with one foot on some stock when he suddenly fell to the floor, slightly bruising his face in the fall. He was carried to a first aid station and then to a hospital where he died within a few minutes. On the morning in question the weather was foggy and the temperature near freezing. Insured was forty-three years of age, five feet seven inches tall, and weighed about 190 pounds. In traveling from one building to the other he walked at his usual brisk pace.

Dr. John E. Greutter, Jr., a specialist in heart diseases, in answer to a hypothetical question, stated that since no autopsy was performed, a positive diagnosis of the cause of insured's death was impossible to make, but that the most likely cause was coronary artery occlusion.

He also stated that in the presence of the diseased coronary artery, multiple exposure to cold weather would precipitate or increase the likelihood of an attack of angina pectoris, but he further testified: "So far as acute coronary artery occlusion is concerned, we do know that there are instances on record in which this state has followed unusual exertion. It must be admitted, this state has followed when an individual is at complete rest. In angina pectoris which is coronary artery sclerosis or hardening, deaths have occurred from this state without occlusion, associated with unusual exertion. It is impossible in this instance to say whether this man died in an acute attack of angina or whether he actually sustained stoppage or thrombosis of the coronary artery. In the presence of coronary artery disease, I would feel that any act which represented unusual exertion could precipitate a fatal attack."

Dr. George R. Storm, who examined insured and was present at the time of his death, testified: "Q. Is there any way of determining when the heart will stop? A. No, sir. Q. Can a person with a coronary occlusion suffer a fatal attack as well in bed as when they are working? A. Yes, sir. Q. Is it possible that a sudden physical exertion in lifting will cause a fatal attack? A. Of course, exertion might precipitate an attack, a lot of them die in their sleep. I don't know anything about his physical condition. I think he told me he had been having some stomach trouble. Q. Could the stomach trouble cause the coronary occlusion? A. No, sir, a lot of them have pains in the stomach and they think it is the heart. Q. A person suffering from coronary occlusion can suffer a heart attack while they are asleep? A. Yes, sir. Q. Or while standing? A. Yes, sir. Q. Or even under any circumstances? A. Yes, sir."

Omitting consideration of the question whether the evidence, in aspects most favorable to appellant, is sufficient to support a finding of accidental death, we proceed to an examination of the assignments of error urged by appellant. The principal contention for reversal is that the trial court erred in giving appellee's requested in-

struction No. 1. This instruction authorized, but did not require, a finding in favor of appellee unless the jury found from a preponderance of the evidence that the insured "came to his death, independently of all other causes, by reason of bodily injuries affected solely through external, violent and accidental means, of which there is a visual contusion or wound on the exterior of the body of the insured, causing death."

This instruction is in the language and terms of the policies. However, appellant insists that it conflicts with instructions given at her request and that it ignores the interpretation which this court has placed on similar policy provisions in the leading case of *Fidelity & Casualty Co.* v. *Meyer*, 106 Ark. 91, 151 S. W. 995, 44 L. R. A. (N. S.) 493, and similar cases cited in *The Travelers Insurance Company* v. *Johnston*, 204 Ark. 307, 162 S. W. 2d 480. The effect of these decisions is that an insurer may be held liable under such policy provision where it appears that death resulted when it did on account of the aggravation of a latent disease from an accidental injury. If the questioned instruction stood alone, it would be open to the objections urged against it. But this is not the case. Appellant requested and the court gave several instructions which authorized the jury to find in her favor if they found that deceased's activities on the day of his death resulted in such exertion and exposure to cold as to cause an unusual shock to his body and which aggravated a diseased heart and thereby hastened death. These instructions define the terms, "external, violent and accidental means," "independently of all other causes," and "visible contusion or wound on the exterior of the body" as used in the policies and appellee's instruction No. 1. Appellant's requested instructions are somewhat lengthy and were skillfully drawn to conform to this court's interpretation of these terms in the cases cited by appellant and had the effect of explaining rather than contradicting instruction No. 1 given at appellee's request. Moreover, the trial court gave the usual instruction cautioning the jury not to single out any one instruction as the law of the case, but to consider them together and as one harmonious whole.

Appellant also relies on the recent case of *Metropolitan Casualty Insurance Co.* v. *Fairchild,* 215 Ark. 416, 220 S. W. 2d 803, where we held the evidence sufficient to sustain a finding that the insured suffered a disabling injury through accidental means under a state of facts materially different from those in the instant case. In that case the undisputed evidence showed that the insured suffered a coronary occlusion while his body was in an awkward, unusual and strained position, a fact not present here.

When viewed as a whole and read together, the instructions given in the case at bar permitted the parties to submit to the fact finding body the respective theories on which each expected to prevail. Under our well settled rule this was proper, and the instructions given at appellant's request fully covered her rights of recovery under the double indemnity provision of the policies. The jury adopted the theory of appellee and found that the insured's death was not accidental under the instructions given and the facts adduced in evidence. We conclude that the giving of appellee's requested instruction No. 1 did not constitute reversible error.

Appellant next challenges the sufficiency of the evidence to support the verdict in favor of appellee. It is argued that the verdict is clearly against the preponderance of the evidence, but this is not the test to be applied after the trial court has overruled the motion for new trial. It is true that we have held that the trial court should grant a motion for new trial when convinced that the verdict of the jury was clearly against the preponderance of the evidence. After the trial court has found to the contrary by overruling the motion, as in the instant case, the verdict will be sustained if there is any substantial evidence to support it. Under the evidence adduced here, the jury was warranted in concluding that the heart attack from which insured died occurred while he was performing his customary duties in his usual manner without the intervention of any unusual exertion, exposure or other condition of an accidental nature.

On cross-examination appellant was asked whether she ever notified appellee of her claim for accidental death benefits and answered that she did not. Appellant objected on the ground that failure to give notice was not alleged in the answer. Appellant argues that the admission of the question and answer resulted in prejudicial error in that it left an impression with the jury that she was a grasping woman who was grossly unfair in pursuing a dubious claim. On redirect examination appellant explained in detail why she had not sooner made a claim and stated that she did not know how her husband had met his death at the time she executed the proof of death. It was also shown that her attorney did notify appellee of the claim for accidental death benefits under the policies. Under these circumstances, we hold that prejudicial error did not result from the admission of this testimony.

We find no prejudicial error in the record, and the judgment is affirmed.