## Puszkarewicz *v.* Prudential Insurance Company of America, Appellant.

Argued October 3, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Kendall H. Shoyer,* with him *Shoyer, Rosenberger, Highley & Burns,* for appellant.

*Henry P. Carr,* for appellee.

OPINION BY HIRT, J., November 14, 1947:

Plaintiff is the named beneficiary in a life insurance policy issued to her son by the defendant company. The policy provides for double indemnity in the event of death, resulting "directly and independently of all other

causes, of bodily injuries, *effected solely through external, violent and accidental means"*. On the death of the insured, defendant paid the face of the policy. Plaintiff, contending that her son died from accident, brought this action to recover the additional accidental death benefits and the jury found in her favor. The judgment entered on the verdict must be reversed.

The insured lived with his parents in Philadelphia. In the late afternoon of January 5, 1945, he went to the second floor of the house to take a bath. He was found dead in the bath tub three-quarters of an hour later. The son then was 29 years old. He had suffered from epilepsy for twelve years. Two medical witnesses testified at the trial of this case, both *for the plaintiff,* and they agreed that the insured had been stricken with an epileptic seizure while in the bath tub. No testimony was offered by the defendant. When insured was found, his head was submerged face down in the water but there was no evidence of external fluid in the lungs and it is conceded that death was not from drowning. Dr. William S. Wadsworth, the coroner's physician, performed an autopsy on the body. He found congestion and several massive hemorrhages in both sides of the lungs. Speaking from wide experience, he stated that in an epileptic seizure the rise in blood pressure may be so violent as to cause the blood vessels of the lungs to burst. In his opinion that was what occurred in this case and that death was caused by a blocking up of the lungs by hemorrhages from epilepsy, which precluded their functioning. Dr. Albert P. Berg, the family physician who had treated the insured for epilepsy for several years, accepted the testimony of Dr. Wadsworth as to what the autopsy disclosed. But on direct examination he gave it as his opinion that the convulsion in itself did not cause death. In excluding drowning, he was "more inclined to believe that this fellow died of asphyxiation or suffocation because of his nose and mouth, as the result of the convulsion, being under water". He accounted for the

massive hemorrhages by the insured's convulsive attempts to breathe with his head under water while unconscious from the epileptic attack. It is contended that the burden of proving an accident has been met by this testimony.

The insured had epileptic seizures over a period of many years and was subject to frequent attacks, of varying severity, at any time. The name of the disease is descriptive of its attributes. Epileptics fall down and often become unconscious during severe seizures. The attacks suffered by the insured were typical of the disease. That he might suffer an attack while in the bath tub and become unconscious, were foreseeable contingencies and therefore not evidence of accident in themselves. Dr. Berg's direct testimony may support an inference of accident from suffocation, but only in the sense of an unusual and unforeseeable effect of an attack which insured might have anticipated because he knew a seizure was liable to occur at any time. But Dr. Berg's direct testimony of an accident, even in that limited sense, was nullified by his admission on cross-examination that the massive hemorrhages of the lungs which caused death "could have been induced by the violence of the attack itself", (inferentially) without suffocation from the immersion of decedent's head in the water of the tub. At best therefore, the proofs under Dr. Berg's testimony were in equal balance as to the occurrence or non-occurrence of an accident, and in this respect plaintiff has failed to meet a burden of proof imposed on her by law. De Reeder et al. v. Travelers Ins. Co., 329 Pa. 328, 198 A. 45; Cf. Whigham v. Metropolitan L. Ins. Co., 343 Pa. 149, 22 A. 2d 704.

But even if an accident be assumed, there can be no recovery in this case for want of proof that death resulted solely through accidental means "independently of all other causes". In cases of this kind, where the proofs point to a preëxisting infirmity which may have been a contributing factor, the burden is on the claimant

to produce evidence to exclude that possibility. *Lucas v. Metropolitan L. Ins. Co.*, 339 Pa. 277, 14 A. 2d 85. *Rodia v. Met. Life Ins. Co.*, 354 Pa. 313, 47 A. 2d 152, and *Speer v. West. & South. Life Ins. Co.*, 158 Pa. Superior Ct. 61, 70, 43 A. 2d 562, are to the same effect. Here, the proofs do more than point to a preëxisting infirmity as a possible contributing factor. It is clear that death would not have occurred but for the epileptic seizure. That is established by the opinions of both medical witnesses testifying for the plaintiff as well as by all of the attending circumstances. The disease was a cause contributing to the death. Insurance policies containing provisions, like those in the present case, have frequently been before the courts and in all of them recovery has been denied where it appeared that disability or death resulted from accidental injury in conjunction with a preëxisting infirmity or disease. Many of our appellate court cases supporting the principle are cited in *Lucas v. Metropolitan L. Ins. Co.*, supra, at page 280.

Since the testimony in its most favorable aspects establishes, rather than excludes, the infirmity of the insured as a coöperating cause of death, there can be no recovery. Cf. *Lederer v. Metro. Life Ins. Co.*, 135 Pa. Superior Ct. 61, 4 A. 2d 608.

Judgment reversed and here entered in favor of the defendant.