LIFE & CASUALTY INSURANCE CO. OF TENN. *v.* JONES.

5-1860-61                                                    328 S. W. 2d 118

Opinion Delivered October 5, 1959.

[Rehearing denied November 9, 1959]

*J. M. Smallwood,* for appellant.

*Gordon & Gordon,* for appellee.

JIM JOHNSON, Associate Justice. Appellee, Mayme Jones, filed these actions to recover from appellant, Life and Casualty Insurance Company of Tennessee, as beneficiary under two policies of insurance issued by appellant on the life of appellee's husband, Riley Jones.

The first policy was a regular life policy which provided for payment of $1,000 in case of death. The same

policy also contained the following accidental death provision:

"Upon receipt at the Home Office of the company of due proof of death of the Insured resulting directly and independently of all other causes from bodily injuries solely through external, violent and accidental means, not caused or contributed to by bodily or mental infirmities, the Company will pay in addition to any other sums due under this Policy an Accidental Death Benefit equal to the amount of life insurance then payable at death; provided that such death occurs (1) after the Insured attains age 5 and prior to attaining age 70, (2) within 90 days from the date such injuries were sustained, and (3) while premiums are not in default beyond the grace period specified in the Policy. The amount of any disability benefits which have been paid or may become payable under this Provision shall be deducted from any amounts payable under this Accidental Death Benefit Provision.

"This provision does not cover death caused (1) from self destruction while sane or insane, (2) from participation in an assault or felony, (3) directly or indirectly from, or contributed to by bodily or mental infirmities or disease in any form, or from medical or surgical treatment thereof, (4) from operating or riding in or descending from any kind of aircraft if the Insured is a pilot, officer or member of the crew of such aircraft or is giving or receiving any kind of training or instruction or has any duties aboard such aircraft or duties requiring descent therefrom, or (5) from riot, insurrection or war, declared or undeclared, or any act attributable thereto, whether or not the Insured is in Military or Naval Service."

The second policy was an accident policy only and contained the following provisions:

"BENEFIT FOR DEATH BY ACCIDENTAL MEANS—If the insured, after the effective date of this policy, sustains drowning or bodily injury effected solely through violent, external and accidental means, and if

such drowning or bodily injury is the direct, independent and proximate cause of the death of the insured within 90 days from the date of such injury, and if such death is not caused or contributed to by disease or infirmity, the Company will on surrender of the policy pay the principal sum specified herein.

"EXCLUSIONS, REDUCTIONS AND LIMITATIONS: This Policy does not cover death caused (1) from self destruction, while sane or insane, (2) directly or indirectly from, or contributed to by, bodily or mental infirmities or disease in any form, or from medical or surgical treatment thereof, (3) from operating or riding in or descending from any kind of aircraft or is giving or receiving any kind of training or instruction or has any duties aboard such aircraft or duties requiring descent therefrom, or (4) from war, declared or undeclared, or any act attributable thereto, whether or not the Insured is in Military or Naval Service except that where the loss or injury occurs on land and within the continental land boundaries of the United States of America and not on a boat, ship or other watercraft wherever located, there shall be paid one-fifth of the amount of the applicable benefit stipulated in this policy."

The jury returned a verdict for appellee in both cases for the amount sued for. Judgment was entered in accordance with the verdict from which appellant prosecutes this appeal.

For reversal, appellant relies on the following points:

(1) The trial court erred in refusing to direct a verdict for appellant in case No. 1860 and in case No. 1861 for the reason that both policies were issued by appellant with Riley Jones as the named assured, based upon applications signed by the appellee without the knowledge and authority of Riley Jones, the named assured in each of said policies.

(2) The trial court committed reversible error in admitting the following incompetent evidence:

(a) In permitting appellee to testify about a discussion that she had had with her husband, Riley Jones.

(b) Permitting Carolyn Jones to testify about the payment of an undetermined number of premiums by Riley Jones.

(c) Permitting Stanley Jones and Buster Dixon to testify that the deceased, Riley Jones, knew that he had insurance policies with appellant.

(3) The trial court erred in failing to direct a verdict for appellant on the accidental death benefits under policy sued on in case No. 1860 and the policy sued on in case No. 1861.

(4) The trial court erred in refusing to give appellant's requested Instruction No. 2.

The facts are briefly as follows:

Two agents of appellant, namely, E. R. Hackworth and J. D. Almand, solicited the insurance here in question by going by the home of Mrs. Mayme Jones and taking the applications. The applications for each policy are exactly alike and contain a long list of questions, some of which pertain to the health of the applicant. After the agents filled in the applications they then instructed Mrs. Mayme Jones to sign her husband's name to the applications, which she did. Mrs. Jones did not read the applications, nor did she read the answers to the questions inserted by the agents. The applications were not attached to and made a part of the policies, and Mrs. Jones never saw the applications again until after the death of her husband, and after the insurance company had refused payment on the policies.

The testimony is in dispute as to what occurred when the applications were filled out. Mrs. Jones testified that only a few questions were asked her and she answered them truthfully. The agents testified that they recorded the answers to questions as given them by Mrs. Jones.

According to the undisputed testimony, Riley Jones and his wife had discussed the matter of insurance and he had authorized her to either reinstate some lapsed policies with the same company or to take out new policies.

It is further undisputed that on the night of April 6, 1957, one Elmer Martin drove to the home of Riley Jones, called him out to the car, and after cursing him struck Riley Jones on the head with a clubbed Coca-Cola bottle. The witnesses place the time of the attack at shortly before 10 p.m., and the time of death prior to 10:30 p.m. that same night.

An autopsy was performed. The report is as follows:

"1. Coronary thrombosis and occlusion of left anterior descending branch of left coronary, with myocardial infarction.

"2. Severe generalized arteriosclerosis with severe coronary sclerosis.

"3. Cardiac hypertrophy, 620 grams.

"4. Laceration of scalp with hemorrhage.

"5. Hypertensive cardiac vascular disease, with terminal cardiac failure.

"6. Congestion of lungs, terminal.

"7. Obesity."

Dr. Roy Millard, a general practitioner, who had been treating Riley Jones over a period of years, testified that the assault precipitated the death of Riley Jones.

Dr. W. M. Hamilton of Little Rock, who is a specialist in internal medicine with emphasis on heart disease, testified that this assault was the proximate cause of the death of Riley Jones. The appellant introduced no medical testimony to refute this.

Appellant's points 1 and 2, relied on for reversal, concern the matter of whether or not appellee was acting as agent for her husband, Riley Jones, when she made application for insurance on his life, and if in fact the applications were made with the knowledge and authority of her husband.

Appellee sought to prove her agency by testifying that her husband wanted the insurance and authorized her to apply for it. She sought to prove knowledge and authority by the testimony of her daughter, Carolyn Jones, relative to payment of an undetermined number of premiums by Riley Jones, and also by the testimony of her son, Stanley Jones, and Buster Dixon concerning Riley Jones' knowledge that he had insurance policies with appellant.

We find no error in the trial court permitting the introduction of this testimony.

The case of *Johnson* v. *Arkansas Foundry Co.*, 173 Ark. 1181, 292 S. W. 373 (this opinion is not printed in the Arkansas Reports) is directly in point. In that case about the only testimony concerning agency was the deposition of the wife in which she stated that she was the agent for her husband. This Court stated at page 375:

"We think it would be competent for her to testify that she was the agent without stating how she was appointed or anything about the circumstances of her appointment . . .

"As we have said, the only question in the case is a question of agency, a question of fact, and Ruby Johnson testifies that she was the agent . . ."

We can see no reason to deviate from the rule set out in the *Johnson* case, *supra*. Certainly under the facts in the case at bar, agency was a question of fact for the jury.

Appellant's points 3 and 4, relied on for reversal, concern the construction of the terms of the accidental death provisions contained in the insurance policies sued

upon. Appellant's requested Instruction No. 2 is as follows:

"If you find from the evidence in this case that Riley Jones' death was caused or contributed by disease, then in such event the plaintiff was not entitled to recover. In other words, if the death of Riley Jones was not directly and proximately caused solely through violent, external and accidental means but that his death was caused or contributed to by diseased condition of his cardio vascular system, if you find the same was diseased, then you are instructed that plaintiff would not be entitled to recover."

Our exhaustive research reveals the law to be well settled in this state that an insurance company is liable on their policy of accident insurance if death resulted when it did on account of an aggravation of a disease by accidental injury, even though death from the disease might have resulted at a later period regardless of the injury, on the theory that if death would not have occurred when it did but for the injury, the accident was the direct, independent and exclusive cause of death at the time. See: *Fidelity & Casualty Company* v. *Meyer,* 106 Ark. 91, 152 S. W. 995; *Maloney* v. *Maryland Casualty Company,* 113 Ark. 174, 167 S. W. 845; *Standard Life & Accident Ins. Company* v. *Schmaltz,* 66 Ark. 588, 53 S. W. 49; *Missouri State Life Ins. Co.* v. *Barron,* 186 Ark. 46, 52 S. W. 2d 733; *National Life & Accident Ins. Co.* v. *Shibley,* 192 Ark. 53; 90 S. W. 2d 766; *Prudential Insurance Company of America* v. *Croley,* 199 Ark. 630; 135 S. W. 2d 322; *Travelers Insurance Company* v. *Johnston,* 204 Ark. 307, 162 S. W. 2d 480; *Metropolitan Casualty Company of N. Y.* v. *Fairchild,* 215 Ark. 416, 220 S. W. 2d 803; *Union Life Ins. Co.* v. *Epperson,* 221 Ark. 522, 254 S. W. 2d 311; *Fidelity Reserve Ins. Co.* v. *English,* 266 Ark. 210, 288 S. W. 2d 951; *Pacific Mutual Life Ins. Co.* v. *Smith,* 166 Ark. 403, 266 S. W. 279.

Therefore, we find no error in the trial court's refusal to give appellant's requested Instruction No. 2, and since the undisputed medical testimony is that the

assault was the proximate cause of the death of Riley Jones, we find no error in the trial court's refusal to direct a verdict.

Affirmed.