JACKSON *v.* SOUTHLAND LIFE INS. CO.

5-3607                                                              393 S. W. 2d 233

Opinion Delivered May 31, 1965.

[Rehearing denied September 20, 1965.]

*E. L. Holloway,* for appellant.

*Gus R. Camp,* for appellee.

ED. F. McFADDIN, Associate Justice. This is an action brought by appellants, Mr. and Mrs. Jackson, against appellee, Southland Life Insurance Company, seeking to collect double indemnity benefits under an insurance policy on the life of their son, Gerald E. Jackson.

The policy was originally issued by Reserve Loan Life Insurance Company of Texas but was reinsured and assumed by Southland Life Insurance Company. The policy insured the life of Gerald E. Jackson for $1000.00 and also for an additional $1000.00 if death should occur through accident, etc. Gerald E. Jackson was drowned on March 12, 1964. The appellee paid the beneficiaries $1000.00 on account of the death of the insured, but denied liability for the additional $1000.00 claimed by them under the said accidental death provision. The appellants filed this action for the double indemnity of $1000.00. The answer specifically pleaded the language of the policy (hereinafter quoted) as a defense. Trial to the Court without a jury resulted in a finding and judgment for the insurance company and this appeal resulted, in which appellants list three points, being:

"1. That the court erred in finding 'that the deceased was seized with an epileptic attack and as a result of such seizure fell into the ditch and drowned, the court concludes that the death was not the result of an accident within the meaning of the policy, and that the same was excluded under the provision of Clause 5.'

"2. That the court erred in entering a judgment for the defendant.

"3. That the court erred in not entering a judgment against the defendant for the amount of one thousand dollars, with interest at 6% from date of death of decedent on March 12, 1964, together with a penalty of 12% and a reasonable attorneys fee."

We will consolidate the three points in this Opinion. The insurance policy here involved stated that the insurance company would pay the beneficiaries the double indemnity upon "due proof of the death of the insured, as the result, directly and independently of all other causes, of bodily injuries sustained through external violent and accidental means . . . . provided . . . . (5) that death shall not have been the result of self destruction, whether sane or insane, or caused or contributed to, directly or indirectly, wholly or partially by disease, or

by bodily or mental infirmity; . . . ." The Company specifically pleaded the quoted language as a defense.

The facts involving the death of the insured were stipulated as follows:

"2. That on March 12, 1964, the insured Gerald E. Jackson, son of the plaintiffs, was working on a ditch near his home near Corning, Arkansas, that the said Gerald E. Jackson had been having for several years frequent epileptic seizures; and that it is agreed by and between counsel for the respective parties to this action that from the evidence found at the scene of the death of the deceased that the said Gerald E. Jackson suffered from and was seized with an epileptic attack while the said Gerald E. Jackson was near the edge of the ditch and as a result of such seizure fell into the ditch which was filled with water about four feet deep and drowned; and that the death did occur from drowning.

"3. That there is no evidence which would indicate that the deceased was morbid or that he had any intention of taking his own life."

We thus have a case in which the insured suffered an epileptic seizure by reason of which he fell in the water and was drowned. The question presented is whether for such death his beneficiaries are entitled to the double indemnity, since the insurance company pleaded the exclusionary language that the death was "caused or contributed to, directly or indirectly, wholly or partially by disease, or by bodily or mental infirmity." When the plaintiffs established that the insured met his death by drowning then the burden shifted to the insurance company to establish that the death by drowning was caused proximately by "disease or by bodily or mental infirmity."

We have many cases of this Court involving double indemnity policies or accident policies with language similar to that contained in the policy before us. These cases begin with *Fidelity & Cas. Co.* v. *Meyer,* 106 Ark. 91, 152 S. W. 995, and continue in an unbroken line to *Life & Cas. Co.* v. *Jones,* 230 Ark. 979, 328 S. W. 2d 118.

We have repeatedly held that it was a question of fact for the jury as to whether the physical infirmity was the proximate cause of the accident. In *Travelers Ins. Co.* v. *Johnston,* 204 Ark. 307, 162 S. W. 2d 480, the insured was suffering from Paget's disease,[1] and as he attempted to alight from a taxicab he fell and fractured his hip. He sued on an accident policy which provided that the policy did not cover an accident "caused directly or indirectly, wholly or partly, by bodily or mental infirmity . . . . or by any other kind of disease." The insurance company claimed that the injury sustained by the insured was caused by the Paget's disease. We said the following instructions were as favorable to the insurance company "as it had the right to ask":

"4. If you find from the evidence in this case that the plaintiff's physical condition at the time he was riding in the taxicab contributed or concurred either directly or indirectly, wholly or in part, to his fall, then in such event the plaintiff is not entitled to recover and you must find for the defendant. In other words, if the fall sustained by the plaintiff was not the direct and proximate cause of the injury, but that the same resulted in whole or in part from his physical infirmities, to-wit, Paget's disease, then you are instructed that the plaintiff would not be entitled to recover.

"A. Proximate cause as is used in these instructions means the immediate, efficient cause without which the result could not and would not have happened."

While *Travelers Ins. Co.* v. *Johnston*[2] involved Pagent's disease, the law is the same in cases wherein the insured was, as here, suffering from epilepsy.[3] Our

---

[1] It is stated in the Opinion that the doctors define Paget's disease as "a chronic degenerative condition of the bones, in which there is an overgrowth of part of the bones and degenerative changes in other parts of the bones, the exact cause of which is not known."

[2] In *Travelers Ins. Co.* v. *Johnston* we reviewed our earlier cases in detail; and that case has been cited and approved in our subsequent cases: *Metropolitan Co.* v. *Fairchild,* 215 Ark. 416, 220 S. W. 2d 803; *Duke* v. *Life & Cas. Co.,* 218 Ark. 522, 254 S. W. 2d 311; *Fidelity Reserve Co.* v. *English,* 226 Ark. 210, 288 S. W. 2d 951; and *Life & Cas. Co.* v. *Jones,* 230 Ark. 979, 328 S. W. 2d 118.

[3] In Malloy's Medical Dictionary for Lawyers epilepsy is defined as follows: "[Gr. *epilepsia,* a seizure, stoppage — Aristotle; the falling sickness, epilepsy — Hippocrates]. A chronic disease, known for ages

search reveals the following epilepsy cases: *Wadsworth* v. *Canadian Ry. Co.,* 49 Canada S. Ct. 115, Ann. Cas. 1914C, p. 306; *Hughes* v. *Standard L. Ins. Co.* (U.S.D.C. La.), 139 F. Supp. 490, also 140 F Supp. 577, Affirmed 240 F. 2d 859, *Standard L. I. Co.* v. *Foster* (Miss.), 49 S. 2d 391; *Metropolitan L. I. Co.* v. *Jenkins* (Fla.), 12 S. 2d 374; *Griffin* v. *Prudential Ins. Co.* (Utah), 133 P. 2d 333, 144 A.L.R. 1402; *New England Ins. Co.* v. *Fleming* (Calif.), 102 F. 2d 143; *Puszkrewicz* v. *Prudential Ins. Co.* (Pa.), 55 A. 2d 431; *Bennett* v. *Metropolitan L. I. Co.* (Wash.), 212 P. 2d 790. There is a splendid anotation in 84 A.L.R. 2d entitled, ''Pre-existing physical condition as affecting liability under accident policy or accident feature of life policy.'' In Am. Jur. 29A, on pages 351 and 353, the general rules are stated in this clear language:·

''The general rule is that the mere fact that the insured is afflicted with some disease or infirmity at the time of an injury will not preclude recovery upon an accident insurance policy if an accident is the direct or proximate cause of death or disability, even though the policy excepts death or injury caused by disease or infirmity ...

''On the other hand, if the insured is afflicted with a disease or infirmity at the time an alleged accident occurs, which disease or infirmity proximately causes or substantially contributes to the death or injury resulting, such death or injury is not within the coverage of a policy which insures against death or bodily injury by accident or accidental means, independently of all other causes, or which excepts death or bodily injury produced by disease or infirmity.''

---

as the sacred disease and the falling sickness. It is characterized by fits or attacks accompanied by loss of consciousness, and violent convulsive motions or jerking of the muscles. In some cases attacks may not occur more than once a year; others tell about only two or three attacks in a lifetime. In other cases, however, the patient may have many attacks that follow one another until death occurs from exhaustion. Fits or paroxysms vary in length from five to twenty minutes." In Funk & Wagnall's New Standard Dictionary of the English language epilepsy is defined as " . . . a chronic nervous disease characterized in its more violent forms (grand mal) by paroxysms recurrent at uncertain intervals, attended by loss of consciousness and sensation, facial distortion, foaming at the mouth, convulsions of the limbs, and difficult stertorous breathing and also followed by sleepiness . . . "

It is a question of fact for the jury as to whether the pre-existing disease was the proximate cause of the resulting accident. In the case at bar the question was submitted to the Trial Court sitting as a jury, and the Trial Court found that the pre-existing disease was the proximate cause of the drowning of the insured. Such finding of the Trial Court is supported by the stipulated facts, which, as heretofore copied, stated that "Gerald E. Jackson suffered from and was seized with an epileptic attack while . . . . near the edge of the ditch . . . .and was drowned." Therefore, the Trial Court, sitting as a jury, had ample evidence to sustain the finding against the plaintiffs.

Affirmed.