## FARM BUREAU MUTUAL INSURANCE COMPANY OF ARKANSAS, INC. *v.* Laura Mae FUQUA

CA 80-44                                             599 S.W. 2d 427

Court of Appeals of Arkansas
Opinion delivered May 7, 1980
Released for publication May 28, 1980

*Laser, Sharp, Haley, Young & Huckabay, P.A.*, for appellant.

*Baim, Baim, Gunti, Mouser & Bryant*, by: *Noel F. Bryant*, for appellee.

GEORGE HOWARD, JR., Judge. The issue before us is whether there is substantial evidence to support the judgment of recovery under an accidental death insurance policy which limits liability to death which results, directly and independently of all other causes, from accidental means.

Appellant issued an accidental deah insurance policy, with a face amount of $1,000.00, to Alto R. Fuqua. The

policy defined the term "accidental death" as follows:

> 'Accidental death — any accident (subject to exclusions occurring while the policy is in force which results, directly and independent of all other causes, in death within 90 days of the accident shall be considered an accidental death under the terms of this policy.'

On January 28, 1976, Mr. Fuqua, age 72, while in the process of constructing a greenhouse, at his residence, fell and sustained a fracture to his right hip. Mr. Fuqua was taken immediately to the Jefferson County Hospital, but was later transferred to the St. Vincent Hospital in Little Rock where he underwent surgery. Mr. Fuqua was released from St. Vincent on March 2, 1976. He was admitted to the Jefferson County Hospital on March 3, 1976, and died on March 4, 1976.

Mr. Fuqua's death certificate listed the immediate cause of death as "Renal Failure" due to "Chronic Renal Disease." The certificate listed the following conditions which contributed to Mr. Fuqua's death, but were not related to the cause of his death: (1) stress ulcer; (2) diabetes; and (3) pulmonary infarction.

Dr. John Crenshaw, Mr. Fuqua's physician at the Jefferson County Hospital, testified that a clerk in his office filled out the death certificate by making use of medical records of Mr. Fuqua's and that he simply signed the certificate; that he saw Mr. Fuqua for the first time in consultation on March 3, 1976; and that Mr. Fuqua was in a semi-conscious state and, therefore, he was unable to acquire any "real information" regarding the history of Mr. Fuqua's injury.

Dr. Crenshaw testified on direct examination by Mr. Bryant:

> Q. From your treatment of Mr. Fuqua, diagnosis and history that you obtained, did you arrive at an opinion based on a reasonable medical certainty as to the cause of Mr. Fuqua's death?

A. Yes, I felt that he died of renal failure which was a complication of pulmonary embolism and the myocardial infarction and the other problems that he had as a result of the accident that occurred.

Dr. Crenshaw testified on cross-examination by Mr. Staten:

I'll ask you a medical question. I'll just go down the line and ask you whether or not he had diabetes, would he have died?

A. He certainly had more hardening of the arteries because he had diabetes, which, in turn, probably contributed to his kidney failure which in turn contributed to his death.

Q. With a reasonable degree of medical certainty, is it your opinion that he would or would not have died had he not had diabetes before he fell and broke his hip?

A. I suspect he would have died whether or not he had diabetes.

Q. From what cause?

A. From the same renal failure that he had anyway.

Q. Which would have been caused by what?

A. By the general aging process.

. . .

Q. Going from 1 to 100, what are the odds that he had pre-existing kidney problems?

A. About 80% . . . 80 or 90% . . . based on his age and his diabetes and his previous prostate surgery.

. . .

Q. Then you are not in a position to tell this Court what caused the renal failure?

A. No, sir, I cannot say what caused that renal failure.

The medical report from Dr. William L. Mason who saw Mr. Fuqua from January 28, 1976, to March 2, 1976, while Mr. Fuqua was confined to St. Vincent Hospital stated:

> ... Mr. Fuqua suffered many complications of this fracture which include the following:
> 1. Probable myocardial infarction, shortly after his fall.
> 2. Pulmonary thromboembolism, multiple.
> 3. Upper gastric intestinal bleeding.
> 4. Diabetes mellitus, requiring insulin during hospitalization.
> 5. Probable gram negative sepsis, secondary to urinary catheter.

All of the above medical problems were set into action by Mr. Fuqua's fall and his subsequent trochanteric fracture of the right hip . . . .

The trial court, sitting as a jury, found that Mr. Fuqua's accidental fall triggered the complications resulting in his death. Judgment was rendered in favor of appellee, widow of Mr. Fuqua, for the face amount of the policy, the statutory penalty, cost, and reasonable attorney's fee of $500.00 with interest at 10% per annum.

Appellant argues that there is no substantial evidence to support the finding that the decedent's fall resulted in his death "directly and independently" of all other causes. Appellant relies heavily upon Mr. Fuqua's death certificate which lists the immediate cause of death as "Renal Failure due to or as a consequence of Chronic Renal Disease." Standing alone, argues appellant, the certificate on its face is conclusive of the issue involved in this appeal that decedent's

death was not due to an accident, directly and independently of all other causes.

Appellant cites *Jackson* v. *Southland Life Insurance Company*, 239 Ark. 576, 393 S.W. 2d 233 (1965) in support of its posture.

Appellant's argument is not persuasive and, accordingly, we reject it and hold that there is ample evidence to support the judgment of the trial court.

Dr. Crenshaw testified that he was not fully aware of Mr. Fuqua's medical history when he first saw Mr. Fuqua on March 3, 1976, in Jefferson Hospital. Consequently, the insurance clerk in his office who prepared the death certificate did so with an incomplete medical report of Mr. Fuqua's condition. Moreover, it is plain that Dr. Crenshaw simply signed the death certificate and did not directly have a hand in its preparation.

Dr. Crenshaw conceded that there is overwhelming medical evidence indicating that Mr. Fuqua's terminal illness was precipitated by the hip fracture that he sustained when he fell from the greenhouse. Moreover, Dr. Mason, who treated Mr. Fuqua from January 28th to March 2nd, makes it crystal clear, in his report, that the complications resulting in the death of Mr. Fuqua were precipitated by the accident causing the fractured hip.

In *Jackson* v. *Southland Life Insurance Company*, supra — involving a claim for double indemnity where the deceased, who had suffered frequent epileptic seizures for "several years," fell in a ditch of water and drowned, when he sustained a seizure while standing near the ditch — our Supreme Court, while recognizing that if an "insured is afflicted with a disease or infirmity at the time an alleged accident occurs, which disease or infirmity proximately causes or substantially contributes to the death or injury resulting, such death or injury is not within the coverage of a policy which insures against death or bodily injury by accident or accidental means, independently of all other causes, or which excepts

death or bodily injury produced by disease or infirmity.", said:

> "We have many cases of this Court involving double indemnity policies or accident policies with language similar to that contained in the policy before us. These cases begin with *Fidelity & Cas. Co.* v. *Meyer*, 106 Ark. 91, 152 S.W. 995, and continue in an unbroken line to *Life & Cas. Co.* v. *Jones*, 230 Ark. 979, 328 S.W. 2d 118. We have repeatedly held that it was a question of fact for the jury as to whether the physical infirmity was the proximate cause of the accident. . . ."

In *Life & Casualty Insurance Company of Tennessee* v. *Jones*, 230 Ark. 979, 328 S.W. 2d 118 (1959), the Arkansas Supreme Court stated:

> "Our exhaustive research reveals the law to be well settled in this state that an insurance company is liable on their policy of accident insurance if death resulted when it did on account of an aggravation of a disease by accidental injury, even though death from the disease might have resulted at a later period regardless of the injury, on the theory that if death would not have occurred when it did but for the injury, the accident was the direct, independent and exclusive cause of death at the time. . . ."

To paraphase the rule in *Jackson*, supra, and *Jones*, supra, it is not absolutely necessary for the physician's testimony to fix the cause of death with extreme precision in accident policies before there can be a recovery containing language comparable to that in the instant case.

Appellee's attorney is awarded an additional fee of $250.00.

Affirmed.